ANDERSON v. RICH et al. (No. 550.)

(Court of Civil Appeals of Texas. Beaumont. June 15, 1920. On Rehearing, July 5, 1920.)

1. **Appeal and error** ⬷⟿544(1) — **Overruling motion for continuance not reviewable without bill of exceptions.**

An assignment of error to the overruling of a motion for continuance cannot be considered, where there is no bill of exceptions to the action of the court, though the judgment recites that the motion was presented and overruled, and that appellant duly excepted.

2. **Parties** ⬷⟿92(1)—**Pleading** ⬷⟿406(8)—**Objection to misjoinder after impaneling jury is too late.**

A plea of misjoinder of parties and causes of action, filed after the jury was impaneled, is too late.

3. **Parties** ⬷⟿91—**Plaintiff cannot dismiss and claim misjoinder of cross-complainants.**

In a suit to recover land, plaintiff cannot plead misjoinder of parties and causes of action as to defendants' cross-actions to recover the land after dismissing his petition, to which all of the cross-complainants except one were made defendants.

4. **Boundaries** ⬷⟿40(1) — **Evidence held to show conclusively that tract set off to defendants' predecessors included disputed strip.**

In a suit by the successor of one to whom all of the survey, except 200 acres set off as a homestead, was conveyed by an administrator, evidence that the survey was wider than shown by the field notes, and that the homestead owners and their successors had claimed the entire width of the survey, *held* to show conclusively that the homestead as set off included the entire width, though that exceeded 200 acres, so that a directed verdict, giving the successors of the homestead owners the strips included in the additional width, was proper.

Appeal from District Court, Liberty County; D. F. Singleton, Judge.

Suit by J. J. Anderson against J. M. Rich and others. Judgment for the defendants on their cross-actions, and plaintiff appeals. Affirmed.

J. Llewellyn, of Liberty, for appellant.
E. B. Pickett, Jr., of Liberty, for appellees.

WALKER, J. This suit was originally instituted by appellant against the appellees, and involved that portion of the Robert Whitlock survey in Liberty county owned by C. A. Speights and wife at the time of their deaths, less 200 acres set apart by the probate court as a homestead for the Speights children.

The defendants filed separate answers, each disclaiming title to all the land sued for by plaintiff except that portion specially described in their respective answers. In

addition thereto, defendants pleaded not guilty, the different statutes of limitation, and by cross-action each of them prayed for an affirmative recovery against plaintiff for the land as claimed by them respectively.

By supplemental petition, the plaintiff pleaded not guilty to defendants' cross-actions. After the jury had been impaneled, the plaintiff dismissed his suit against all the defendants. The trial then proceeded, with the defendants as cross-plaintiffs and the original plaintiff as cross-defendant. On conclusion of the testimony a verdict was instructed for each of the cross-plaintiffs for the land respectively claimed by them. To this action of the court the cross-defendant excepted, and has duly perfected his appeal.

[1] As appellant has not brought forward in the transcript a bill of exception to the action of the court in overruling his motion for continuance, his assignment of error presenting this point cannot be considered. The judgment recites that the motion was presented and overruled, and that appellant duly excepted, but "the action of the court upon motions for continuance can be revised * * * only when exception is preserved and presented in a proper bill." Railway Co. v. Mallon, 65 Tex. 115.

[2, 3] In connection with his plea of not guilty, appellant also pleaded a misjoinder of parties and of causes of action. No error was committed in overruling this plea. In the first place such a plea came too late, after the jury had been impaneled, and again, as all the appellees except Mrs. Woods were brought into this case by the appellant, he could not create a misjoinder of parties and of causes of action by dismissing his cause of action against them and pleading not guilty as to their cross-actions.

[4] Appellant has duly presented for our consideration the action of the trial court in instructing a verdict against him. This has called for a review by us of all the testimony in the case. Not only have we read the statements as made in the briefs, but we have carefully examined the statement of facts, together with the map which is made a part of the statement of facts, showing the contentions and claims of the different parties. Appellant holds under a deed made to his father on the 24th day of June, 1869, by F. M. Wallis, administrator of the estate of C. A. Speights and Harriet Speights. In this deed the land conveyed is described as follows:

"The following described tract of land belonging to the estates of said decedents C. A. Speights and Harriet Speights, to wit: Two hundred and thirty-six acres (236) the same being a part of the headright of Robert Whitlock situated in said county of Liberty, state of Texas, and being all that portion of the tract of land upon which the late homestead of the decedents is situated, except the two hundred acres set apart as a homestead for the children of said decedents. For better description reference is made to following field notes. [Then follows the field notes of the entire Whitlock survey.]"

The north line of the Whitlock is a common line with the south line of the Joseph Dunman, and the south line of the Whitlock is a common line with the north line of the James Mayfield. By its original calls the Whitlock survey is 8,030 varas long and 810 varas wide. As we gather from the statement of facts, the Speights home place was in the eastern portion of the survey, and was bounded on the north by the north boundary line of the Whitlock; that is, C. A. Speights owned the full width of the survey. In a special charge presented by appellant, he conceded to the appellees 200 acres of the land described in his petition, and claimed respectively by them in their answers. By their disclaimers, appellees conceded to appellant all the land originally sued for by him, except that portion which they claimed constituted the 200 acres set apart to the Speights children. This litigation grows out of the fact that the Whitlock was 875.6 varas wide instead of 810 varas wide. The description in the deed from the administrator presupposes that the 200 acres had been "set apart" to the Speights children at the time the deed was executed by the administrator to Anderson. Speights and wife died some time prior to 1869. On the 12th day of December, 1874, the courthouse of Liberty county and all the court records were destroyed by fire. Thus all the proceedings involving the Speights estate were destroyed, and, as appellees had no copies of such proceedings, they undertook to locate the 200-acre homestead by circumstances. The substance of their testimony is as follows:

(1) It was conceded that the land sold by the administrator to old man Anderson, the father of appellant, lies east of the 200-acre homestead.

(2) Appellant and appellees agree as to the true location of the northeast corner of the homestead 200 acres; this being a common corner with the land claimed by appellant, and is on the north boundary line of the Whitlock.

(3) Many efforts have been made to survey a line south from this agreed corner on the north line of the Whitlock. If a corner is established on this line at 810 varas south from the agreed corner, no marked line exists running west. If appellant's theory is correct, such a line must have existed, because the 200 acres had been "set apart," unless it was set apart without an actual survey. Between the north and south lines of the Whitlock, there is no line running

west intersecting a line running south from the agreed corner.

(4) Until an actual survey was made some time in the '80's, it was generally understood that the Whitlock was only 810 varas wide.

(5) The Speights children sold their interest in this 200-acre homestead to G. W. Albritton, describing the same as follows:

"A certain tract or parcel of land situate, lying and being in the county of Liberty state of Texas aforesaid containing forty acres a part of the headright of Robert Whitlock and consists of an undivided interest of one-fifth part of a tract of two hundred acres which was set apart as a homestead to and for the children of Cammillus A. Speights and Harriet Speights (deceased) and more particularly known and designated by the following metes and bounds (to wit):

"Beginning at a corner on the north line of the said survey of Robert Whitlock on the edge of the prairie near the late residence of the said Cammillus A. Speights and Harriet Speights from which a red oak 20 inches in diameter marked bears south about 8 varas distant;

"Thence south 89 deg. W. 1394 varas a post for corner on the south boundary line of said Whitlock survey;

"Thence south 1 deg. east 810 varas to a post for corner on the south boundary line of said Whitlock survey;

"Thence north 89 deg. 1394 varas to a post for corner in the big prairie;

"Thence north 1 deg. west 810 varas to the place of beginning."

This deed was dated April 28, 1873.

Also deed from John Speights to G. W. Albritton, dated December 16, 1876.

Also deed from Benjamin Bessent and wife to G. W. Albritton, dated January 10, 1871, giving field notes as follows:

"Beginning at a stake for corner on the south boundary line of the Dunman league in the prairie east of the Wallisville road from which a pin oak marked ⊠ & B about 18 inches in diameter bears nearly south at about 8 varas distance; thence west along the south boundary line of the Dunman league 1,400 varas to corner in the marsh; thence south 810 varas to a stake for corner in a marsh; thence north 89 deg. east with the north boundary line of the Mayfield survey 1,400 varas to a stake for corner on said line; thence north 810 to the place of beginning."

Other deeds were offered, showing a conveyance of all the Speights interest. We give the above because of the calls in the description.

(6) The marshes called for in the deeds from the Speights children to Albritton are found only on the original lines of the Whitlock. If the east and west lines of the homestead tract begin on the north line of the Whitlock and run south only 810 varas, the corners would be made on high land and not in the marsh.

(7) In 1888 Albritton sold 50 acres off of the east end of the 200-acre homestead, adjoining appellant's land, describing it as follows:

"Beginning north of a water oak tree 18 in. in dia. Thence, south, 810 varas more or less to the north boundary line of the Holly now known as the Mayfield tract. Thence, west, far enough so that a parallel line with the above east line will contain fifty acres of land."

Appellant's father, under whom he holds, went into possession of the land claimed by him under the deed from the administrator about the date of his deed, and he was succeeded in possession by appellant, who has lived on this land practically all his life, having moved there with his father in 1869.

(9) During all the years appellees and those under whom they hold have been on this land, they claimed from the north line to the south line, claiming all the land west of the line running south from the agreed northeast corner of the Davis 50 acres, which appellant concedes to be the northeast corner of the 200-acre homestead tract. Many witnesses testified that they had cut timber at different times off the disputed strip, for the appellees and those under whom they hold; that appellant knew of this, saw them cutting it, showed them the south boundary line of the Whitlock as being the south boundary line of the Albritton, and did not question the fact that old man Albritton owned to this line. Some of the witnesses had lived in this immediate vicinity since the days of old man Speights, and knew him when he was in possession of the land. They had never heard of a claim to this land by appellant or his father until a short while before this suit was filed, but testified that Albritton claimed all the land between the north and south lines of the Whitlock.

(10) Many years ago Major Dark, a practical surveyor, undertook to survey out the Davis 50 acres. He began at the agreed northeast corner, ran south 810 varas, and established a corner, then went back to the northeast corner and ran west on the north boundary line of the Whitlock a sufficient distance to make 50 acres, then ran south and established the southwest corner of the 50 acres. When he had finished this work, presumably because he could not find a line running west from the southeast corner of the Davis as established by him to the southwest corner of the Davis as established by him, he stated that his work was all wrong, and that he would have to come back again and fix it. Appellant and his father were present, and appellant testified that he heard Major Dark say that the work was all wrong. When this survey was made by Major Dark, appellant's father saw that the Whitlock was more than 810 varas wide.

but he did not assert any claim to the excess; that is, to the strip lying between the south boundary line of the Whitlock and a line running west from a point 810 varas from the north boundary line of the Whitlock.

There are many other circumstances in the record tending to show that the 200-acre homestead survey was designated on the ground at the time appellant's father bought from the administrator, but we believe the facts above stated are sufficient to sustain the peremptory instruction. Appellant testified that he claimed the excess as soon as it was found; that he had some indefinite agreement with old man Albritton about the timber on the disputed strip, and that he himself had cut a little timber off of it. No survey is shown to have been made by any one locating the northeast corner of the 200-acre homestead tract, but during all these years it has been a well-recognized corner. How could this be unless it was an established corner when the administrator made the deed to Mr. Anderson? Also, it appears that Albritton, who owned the 200-acre homestead tract, and Anderson, who held under the administrator, recognized a common line between them. It is not shown that such a line was run subsequent to 1869. Then it must have existed at the time of the administrator's deed. There is nothing in the administrator's deed to Anderson suggesting the shape of the 200 acres as reserved, nor its location, but no dispute has ever arisen as to the location of the 200 acres. There is no suggestion that any one believed that the Whitlock was over 810 varas wide until many years after Albritton had bought his land from the Speights children; so if Albritton and Anderson recognized a common line between them, 810 varas long, and if it was believed by Anderson that it was only 810 varas from the north line of the Whitlock to the south line of the Whitlock, would not it follow that Anderson was asserting no claim to the land now in controversy? The map, which is brought up as an exhibit in the statement of facts, shows that appellant conceded to appellees 200 acres of land lying next to the north boundary line of the Whitlock, the northeast corner being the agreed northeast corner of the Davis tract, the east line being 810 varas long, the west line being 810 varas long, and the north and south lines being of sufficient length to make exactly 200 acres. This claim on the part of appellant shows that the land in controversy lies between the original south boundary line of the Whitlock and the south boundary line of the 200 acres, that is, a strip 65.6 varas wide and as long as the 200 acres as designated by him; also another strip, lying west of the 200 acres

as designated by him, about 112 varas wide and 810 varas long. Appellant's main body of land lies east of the homestead tract. It is not at all probable that a probate court would set apart 200 acres as a homestead, leaving the balance of the tract in the shape claimed by appellant. This excess, that is, the land in controversy, amounts to about 30 acres, and in the shape claimed by appellant, at the time of the administrator's sale, it would have been practically worthless.

In our judgment this record presented no issue for the jury, and the trial court correctly instructed a verdict for appellees. The judgment of the trial court is in all things affirmed.

## On Rehearing.

In saying that "it was conceded that the land sold by the administrator * * * lies east of the 200-acre homestead," it was not our intention to find that appellant claimed no land except that lying east of a line running south from the northeast corner of the Davis tract, but this expression should be construed with the other facts found by us, giving the location of the land actually claimed by appellant.