## HARVEY COMPANY, Limited, et al. v. BRADEN.　(No. 2247.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 23, 1924. Rehearing Denied March 19, 1924.)

**1. Bankruptcy ⬤⇒20(1), 391(3)—Suggestion of filing of petition in bankruptcy by defendant held insufficient to authorize stay of proceedings in state court; attempt to enforce judgment may be restrained by federal court.**

A mere suggestion in an unverified amended pleading by defendant, in an action pending in a state court to foreclose a mortgage lien, that he had filed a voluntary petition in bankruptcy, without proof of such fact or allegations that he had been discharged, that a receiver had been appointed for his property, or that he had been adjudged a bankrupt, is insufficient to authorize a stay of proceedings under Comp. St. U. S. § 9595; the court having jurisdiction to render judgment until appointment and intervention of a trustee is shown, though an attempt to enforce the judgment may be restrained by the federal court.

**2. Abatement and revival ⬤⇒43—Suit against partnership not abated by bankruptcy of one.**

A suit against partners as such will not abate because of the bankruptcy of one, whether voluntary or involuntary.

**3. Appeal and error ⬤⇒520(4)—Error in overruling applications for continuance not considered where not preserved and presented by bill of exceptions.**

Under district and county court rules 55 and 70, assignments of error in overruling applications for continuance will be disregarded. unless preserved and presented in the appellate court by a proper bill of exceptions; such applications not being made part of the record by the court's order overruling them.

**4. Evidence ⬤⇒471(3)—Testimony as to parties interested at drilling of well held not inadmissible as conclusion.**

Testimony that certain parties were interested in the drilling of an oil well *held* not inadmissible as a legal conclusion, being a statement of a fact, the weight of which was for the jury.

**5. Partnership ⬤⇒49—Party's admission of membership in partnership competent against him.**

A party's admission that he is a member of a partnership is competent evidence against him, though not binding on other members, unless made in their presence.

**6. Joint-stock companies and business trusts ⬤⇒15(1)—Stockholder in common-law trust liable as partner.**

A stockholder in a joint-stock association formed under a trust agreement is a partner, and liable as such for the concern's indebtedness.

**7. Partnership ⬤⇒352—"Limited partnership" held not created by declaration of trust.**

A declaration of trust not providing for general partners liable jointly and severally and special partners with limited liability, and not complying with the formal requirements of Vernon's Sayles' Ann. Civ. St. 1914, arts. 6129, 6130, 6132, 6134, 6135, does not create a "limited partnership" under such chapter.

[Ed. Note.—For other definitions. see Words and Phrases. First and Second Series, Limited Partnership.]

**8. Joint-stock companies and business trusts ⬤⇒15(1)—Statute may fix legal status and liabilities of those becoming stockholders or members of joint-stock companies.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 6151, 6153 of which declare judgments against unincorporated joint-stock companies conclusive on individual stockholders and subject their property to execution after exhaustion of the joint property, does not make a joint-stock association formed under a trust agreement illegal, but the Legislature may fix the legal status thereof as well as the rights and liabilities of those who afterward become stockholders or members.

**9. Joint-stock companies and business trusts ⬤⇒13—Stockholders of association organized under declaration of trust held liable as partners.**

A joint-stock association, formed under a declaration contemplating a special, active, and discretionary trust, imposing on the trustees duties and responsibilities devolving on the managing member of a firm or other business association, *held* an organization within Vernon's Sayles' Ann. Civ. St. 1914, arts. 6149–6154, under which the stockholders are equitable owners of its assets, entitled under general rules of law to a voice in its management, and liable as partners.

**10. Joint-stock companies and business trusts ⬤⇒15(1)—Act as to individual liability of stockholders of any "incorporated joint-stock company or association" construed.**

"Any incorporated joint-stock company or association," to which Vernon's Sayles' Ann. Civ. St. 1914, articles 6151, 6153 of which declare judgments against unincorporated joint-stock companies conclusive on individual stockholders and subject their property to execution after exhaustion of the joint property, is made applicable by article 6149, includes any adventure or business enterprise organized for profit, and not clearly a common-law partnership, whether it exists under a declaration of trust and issues certificates of stock or not, providing it is not a limited partnership within chapter 1, a private corporation organized under title 25 (articles 1117–1321), or merely a technical, passive, simple, or ministerial trust.

**11. Master and servant ⬤⇒82(3)—Record of declaration of trust held not constructive notice of interest claimed in property subject to lien.**

A declaration of trust describing no land owned or about to be acquired by the maker in any county, nor any personalty of any description, *held* not an instrument which the law contemplates shall be recorded (Vernon's Sayles' Ann. Civ. St. 1914, arts. 6823, 6827) so as to render the record thereof constructive notice to a laborer's lien claimant of any in-

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

terest claimed in any realty or personalty in any county.

**12. Joint-stock companies and business trusts ⊂⊃19—Findings that individuals sued as co-defendants with joint-stock company were stockholders and members thereof sustained.**

Evidence *held* sufficient to sustain findings that individuals sued as codefendants with a joint-stock company were stockholders and members thereof.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by Fred W. Braden against the Harvey Company, Limited, and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Veale & Lumpkin, of Amarillo, for appellant Read.

Reeder & Reeder, of Amarillo, for appellant Hedrick,

Coffee & Holmes, of Miami, for appellant Osborne.

Turner & Dooley, of Amarillo, for appellee.

HALL, C. J. The appellee, Braden, sued the appellant company, J. I. Harvey, L. C. Morgan, H. C. Wright, S. L. Jones, A. R. Calloway, Arnold Steeger, Mrs. M. E. Harvey, N. H. Read, E. B. Hedrick, and J. R. Osborne to recover the sum of $1,761, and to foreclose laborer's liens on property belonging to the company. The material allegations in his petition are that the defendants were partners, operating under the name of the Harvey Company, Ltd., engaged in drilling a well for oil and gas in Gray county, Tex.; that a joint-stock company was formed under a trust agreement recorded in the deed records of Gray county; that J. I. Harvey and L. C. Morgan were the trustees of said common-law trust, but that all of the defendants, operating under the name of the Harvey Company, Ltd., were partners, and as such are jointly and severally liable to him for the amount claimed; that he was employed by the company acting through its trustee, J. I. Harvey, to work as a tool dresser at $10 per day for such work; that he worked 241 days and had been paid $1,125, leaving a balance of $1,285 still due him and unpaid; that one A. D. Tucker commenced to work for said company in July, 1922, and worked until in October of that year at the rate of $4 per day for a part of the time, and $5 per day for the remainder, for which services the company owed him $476; that the said Tucker had duly made and filed his laborer's lien in Gray county, and for a valuable consideration had conveyed to plaintiff his claim and lien. The Harvey Company, Ltd., and J. I. Harvey answered by general denial, and at the April term, 1923, J. I. Harvey

amended, alleging that on April 20, 1923, he filed a voluntary petition in bankruptcy in the District Court of the United States for the Northern District of Texas, and suggested to the court by reason thereof that it did not have jurisdiction to try the cause, and that the trustee in bankruptcy should be made a party. The defendants Jones, Calloway, Steeger, and Wright were duly served with process, but made default. Defendant Morgan was served with notice to serve nonresident defendants, and defaulted. No process was served upon Mrs. Harvey, and no personal judgment was rendered against her. The defendants Read, Hedrick, and Osborne answered separately, denying the allegation of partnership under oath.

[1] The first proposition is to the effect that, when it is made known to a state court upon call of a suit pending therein that one of the defendants in the action has filed a voluntary petition in bankruptcy, it is the duty of the state court to stay proceedings where there is an effort to foreclose a lien upon property then in custody of the bankrupt court. The amended pleading filed by J. I. Harvey, suggesting to the court that he had filed his voluntary petition in bankruptcy, was not verified, nor was any proof offered to sustain the allegation. It was not shown by the pleadings that Harvey had been discharged by the bankrupt court; that any receiver had been appointed for his property, or that he had even been adjudged a bankrupt. The pleading was therefore wholly insufficient to authorize the trial judge to stay proceedings. Bowman v. Strother, 144 Mo. App. 100, 128 S. W. 848; Morgan Bros. v. Dayton Coal & Iron Co., 134 Tenn. 228, 183 S. W. 1019, Ann. Cas. 1917E, 42; Texas F. & B. Co. v. First State Bank of Channing (Tex. Civ. App.) 149 S. W. 779; Rennebaum v. Atkinson (Ky.) 52 S. W. 828. Merely the beginning of bankruptcy proceedings will not defeat the jurisdiction of a state court previously set in motion. Texas Fidelity & Bonding Co. v. First State Bank of Channing, supra; Lydick v. Neville (C. C. A.) 287 Fed. 479. The doctrine has been frequently announced that a mere suggestion made in an action pending in a state court by a defendant therein that he has become bankrupt will not prevent the state court from proceeding to judgment but that it is the attempt to enforce the judgment which will be restrained by the federal court. Chase v. F. & M. National Bank, 202 Fed. 904, 121 C. C. A. 262; Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128; In re McBryde (D. C.) 99 Fed. 686; Frazier v. So. L. & T. Co., 99 Fed. 707, 40 C. C. A. 76. It is further held that, until it is shown that a trustee has been appointed and until he has intervened in the suit, a judgment of

foreclosure may be taken by the state court. Miller v. Clements, 54 Tex. 351; In re New England Breeder's Club (D. C.) 175 Fed. 504; In re· Rathman, 183 Fed. 923, 106 C. C. A. 253. Numerous federal authorities bearing upon this question are reviewed in a well-considered opinion by Judge Sanford, in Re Dayton Coal & Iron Co. (D. C.) 291 Fed. 390. Like the instant case, the right of the creditors of the insolvent to foreclose their mortgage liens was there involved. Certain other creditors filed a creditor's bill in the chancery court of Rhea county, Tenn., in which the mortgage foreclosure was sought. Five days after the appointment of the receiver by the chancery· court of Tennessee other creditors filed in the federal court an involuntary petition in bankruptcy against the Dayton Company. ·In the course of the discussion it is said:

"By the filing of the original and amended creditors' bills in the chancery court, seeking the administration 'of all of the assets of the Dayton Company, to which the Trust Company was a party defendant, and by the appointment of a receiver who took possession of the company's property, including that covered by the mortgage, the chancery court necessarily acquired the jurisdiction to administer such property, which continued, through the actual possession of its receivers, to the time of the Supreme Court decree, unless terminated, as the trustee in bankruptcy insists, as of the date when the first petition in bankruptcy was, filed, by the retroactive effect of the adjudication in bankruptcy made thereafter."

Citing the authorities to sustain his statements, Judge Sanford says:

"The custody, or constructive possession, of the debtor's property which is vested in the bankruptcy court by the filing of the petition, ex propria vigore, extends, however, only to the property then held by or for him, of which the court might summarily take possession. * * * And it does not extend to property otherwise held as to which an adverse claimant has a substantial pre-existing claim of lien or title, whose validity, in ∕ the absence of actual possession by the bankruptcy court can only 'be determined in a plenary suit by the trustee in bankruptcy. * * * Nor does the filing of a petition in bankruptcy oust the possession of the debtor's property that has been previously acquired by a state court in the suit of an adverse claimant or terminate the jurisdiction of such court. * * * Thus it does not terminate the prior jurisdiction of a state court in a ·suit to foreclose a mortgage, * * * or, in a suit to enforce a pre-existing lien. * * ·* A more difficult question arises where the possession of the state court was obtained in a proceeding to acquire a lien by attachment or otherwise commenced, within four months before the filing of the petition in bankruptcy and invalidated by the provisions of section 67 of the Bankruptcy Act. * * * However, even in such case, it seems clear, upon principle, that the bankruptcy court cannot be vested by the filing of the petition with a constructive possession of the property which can operate of its own force—contrary to every analogy of the law—to oust the actual possession of the state court, and that it acquires, at the most, a right to the custody and control of the property which entitles it to obtain possession in an appropriate manner from the state court, and, if necessary. to stay further proceedings in the state court in regard thereto."

[2] A review of the authorities cited by Judge Sanford convinces us that the trial court did not err in refusing to grant the stay. The rule is further announced that a suit against partners, as such, will not abate by reason of the bankruptcy of one partner, and that the rule applies in cases of voluntary bankruptcy as well as to involuntary bankruptcy proceedings. 7 C. J. 349; In re Geister (D. C.) 97 Fed. 322. The record does not bring this case within the provisions of U. S. Comp. Stat. § 9595.

[3] The appellant Read's next contention is that the court erred in overruling the application for a continuance or postponement. Under district and county court rules 55 and 70 alleged error in overruling an application for `continuance must be preserved and presented in this court by proper bill of exceptions, or the assignment will be disregarded. There are two applications for continuance in the record, but the orders of the court overruling them do not make the applications themselves part of the record. There is no bill of exceptions incorporating either of the applications to be found in the transcript. It is uniformly held that under such conditions the error, if any, could not be considered. Anderson v. Rich (Tex. Civ. App.) 223 S. W. 540; Darby v. White (Tex. Civ. App.) 165 S. W. 481; Texas City Terminal Co. v. Thomas (Tex. Civ. App.) 178 S. W. 707.

[4-6] The appellant insists under the third proposition that the court erred in permitting the witness Tucker to answer the following question propounded by plaintiff's attorney: "Who was interested in drilling that well 'there?" Tucker answered that L. C. Morgan, James I. Harvey, Mr. Read, Mr. Osborne, and Mr. Hedrick were interested. The ·objection urged to this testimony is that the answer would be a conclusion of the witness. We think 'the court correctly overruled the objection. The answer was not a conclusion of law but was the statement of a fact. If Tucker actually knew who were · interested in drilling the well, he should be permitted to give their names. The objection goes to the weight and not to the admissibility of the testimony. The accuracy and extent of his knowledge of the fact might be weakened or .destroyed upon cross-examination, but until this was done 'the plaintiff was entitled to have the evidence go to the jury for whatever it might be worth. Read's statement to this witness

260 S.W.—42

that he was a stockholder in the company is admissible as a declaration by Read against his interest. Every man is the best possible witness against himself. Hardy v. De Leon, 5 Tex. 211, 243. The admission of a party that he is a member of a partnership is competent evidence against himself, though it is not binding upon other purported members, unless the statement is made in their presence. Wallis v. Wood (Tex. Sup.) 7 S. W. 852; White v. Whaley, 1 White & W. Civ. Cas. Ct. App. §§ 101, 102; 1 R. C. L. 514, § 54; Bivins v. Oldham (Tex. Civ. App.) 224 S. W. 240. The evidence was not offered to prove the fact that a partnership existed between all of the parties to the agreement; that is shown by the trust agreement itself. Neither was it offered to bind Read as a partner upon the principle of estoppel. If he was in fact a stockholder in the association, then he was in law a partner, and liable as such for the indebtedness of the concern.

Under the fourth proposition it is insisted that the court erred in permitting the witness Tucker and the appellee, Braden, to testify concerning conversations they had had with Read. Braden was permitted to testify that he had a conversation with Read with reference to ownership of stock in the company, and that Read stated while he was at the well one day that he had enough stock that if it made a well he would not have to work any more. The testimony of Tucker to the same fact was also objected to upon the ground that it was immaterial and irrelevant because the defendants could not be held as partners upon the principle of estoppel, since there were no pleadings to justify such proof, and, further, since the mere fact that the defendant Read may have permitted himself to be held out as a partner would not render him liable as such to plaintiff unless it was shown that plaintiff extended credit on the faith of such holding out. For the reasons heretofore stated in disposing of the third proposition, we think the court correctly overruled the objections.

[7-10] The next contention to be considered is that, since the declaration of trust expressly states that the trustee and the stockholders in the company shall not be liable as partners, the appellee cannot recover personal judgment against them. We do not assent to this proposition. The declaration of trust executed by Harvey and filed does not, under title 102, c. 1, V. S. C. S., create a limited partnership because it does not provide for general partners who shall be liable jointly and severally and for special partners with limited liability; nor does it comply in its terms with the formal requirements of articles 6129, 6130, 6132, 6134, and 6135. By article 6151, c. 2 of this title, relating to unincorporated joint-stock companies, it is expressly declared that whatever

judgments shall be rendered shall be conclusive on the individual stockholders. Article 6153 of the same chapter makes the property of individual stockholders who are served with process liable to execution for the satisfaction of the judgment after the joint property has been exhausted. By its express terms article 6149, chapter 2 is made applicable to "any unincorporated joint-stock company or association." which we think includes any joint adventure or business enterprise organized for profit and not clearly a common-law partnership, whether it exists under a declaration of trust or not, and whether it issues certificate of stock, provided it does not come within the terms of chapter 1, or is not a private corporation, organized under the provisions of title 25. Chapter 2 does not make such an association illegal, but the Legislature, as it had the right to do in advance, may fix the legal status of such an association as well as the rights and liabilities of those who thereafter may become stockholders or members. If the instrument under consideration creates an organization which comes within the terms of chapter 2, then the stockholders are equitable owners of its assets, and under general rules of law are entitled to a voice in its management, and are liable as partners. Clark v. Brown (Tex. Civ. App.) 108 S. W. 421; Slaughter v. American Baptist Publication Society (Tex. Civ. App.) 150 S. W. 224. The association contemplated by this declaration of trust is not a mere passive, ministerial, or simple trust, but is clearly a special, active and discretionary trust, and imposes upon Harvey and such other trustees as he may thereafter appoint such duties and responsibilities as devolve upon the managing member of a firm or other business association. We believe that the multitude of irreconcilable legal refinements, and the babel of contradictory and confusing discussions of the questions by the courts of other jurisdictions, which are provoked by what is known as the Massachusetts Trust Doctrine, are all swept aside by the provisions of chapter 2. It is our opinion that this chapter groups "any unincorporated joint-stock company or association, whether foreign or domestic," under one general class, and settles the status of its members and stockholders by expressly declaring that judgments rendered against such association of persons shall be conclusive upon them as individuals, and shall be equally binding upon the individual property of stockholders and members who are served with process. Of course private corporations existing under title 25 technically limited partnerships and joint-stock companies existing under the provisions of chapter 1, and common-law partnerships are not included and controlled by chapter 2, but every other association, formed for business purposes, and conducted for profit, and which is not merely

a technical, passive, simple, or ministerial trust, is comprehended by its provisions. This is the view of this court as expressed in West Side Oil Company v. McDorman (Tex. Civ. App.) 244 S. W. 167, in which we held that the stockholders were liable as partners, and we see no reason for changing or modifying our holding. Moreover, this seems to have been the view taken in the case of Dee v. Taylor-Hanna-James Co. (Tex. Civ. App.) 227 S. W. 361. We are not informed by the opinion in that case whether the individual members were ever served with process, but the judgment in the trial court against all the members was affirmed upon the principle of estoppel, based upon a statement furnished the creditor plaintiff by the manager of the association, which stated that the defendants were members of the debtor partnership, and the further showing that credit was extended upon faith of their being members. In the case of Davis v. Hudgins (Tex. Civ. App.) 225 S. W. 73, the Dallas Court of Appeals had under consideration the right of certain beneficiaries, who were stockholders in such an association, to sue the trustees for breaches of trust and to have a receiver appointed. While Judge Talbot held that the trust instrument did not make stockholders partners in a technical sense, he also said that it was a trust similar to that shown in the case of Bingham v. Graham (Tex. Civ. App.) 220 S. W. 105, decided by this court, and that it was not necessary to make all members, as individuals, parties to such suit. In both the Bingham and the Davis Cases the action was between the members of the association, and the battleground was the want of necessary parties defendant. In both cases the jurisdiction and action of the trial court were sustained upon the provisions of chapter 2, title 102, as well as upon the equitable doctrine of "virtual representation." The question of the personal liability of the members of such associations to creditors was not involved in either suit, and in both cases the declarations of trust created active trusts, though that feature was not involved or discussed. The appellant insists that under the authority of Morehead v. Greenville Exchange National Bank (Tex. Civ. App.) 243 S. W. 546, we should hold that the association in the instant case is a Massachusetts trust and that the appellants are not personally liable. In the Morehead Case the trust instrument was, in its main features, similar to the one under consideration, and the trial court held that the individual members were liable as partners. The Texarkana Court of Appeals affirmed the judgment, but did not base the affirmance upon chapter 2 but rather predicated it upon the finding that trustees did not have supreme authority in controlling the business which they were to conduct. The effect of this holding is to declare the trust to be an ac-

tive and discretionary trust, which, according to our view, brings that company within the terms of our statute. The Supreme Court has granted a writ of error in that case which we may presume was for the purpose of settling the question, but no opinion has yet been handed down. In the case of McCamey v. Hollister Oil Company (Tex. Civ. App.) 241 S. W. 689, the question under consideration was discussed by Dunklin, J., and, after an illuminating review of many authorities in other jurisdictions bearing upon the Massachusetts doctrine, the conclusion was reached that the creditor, a driller of the company's oil well, was entitled to recover against the company and all members who had been served with process, and further held that the effect of chapter 2, title 102, was to declare the common-law rule of partnership liability as to all stockholders of the association, and that the limited liability granted by chapter 1 to associations complying with its provisions could not be accorded to those who were associated under such a trust declaration. A writ of error has been granted in that case, presumably because of a qualified concurrence of Justice Buck in the majority opinion. The same court followed the McCamey Case in the subsequent case of Howe v. Wichita State Bank & Trust Company (Tex. Civ. App.) 242 S. W. 1092, in which a writ of error has also been granted. In the case of Graham Hotel Corporation v. Leader (Tex. Civ. App.) 241 S. W. 700, Judge Buck held that the stockholders of a hotel company, owning and operating a hotel under a declaration of trust exempting its stockholders from personal liability, but which had not been recorded, was liable to a creditor, because they had no notice of the terms of the instrument limiting the personal liability of the trustees. The effect of chapter 2 of our statutes was not discussed. It is true that in the case of Industrial Lumber Company v. Texas Pine Land Association, 31 Tex. Civ. App. 375, 72 S. W. 875, it is held that our statutes relating to limited partnerships do not preclude an ordinary partnership from expressly contracting with a third party that as to liabilities growing out of the transaction evidenced by the contract the partners shall not be individually responsible, and that the third party must look to the firm property alone for indemnity, but no such contract with Braden and Tucker is shown in this case, and that decision was handed down in 1903, four years before chapter 2 was enacted. Without further lengthening this opinion upon this point, suffice it to say that the views here announced are in accord with the decisions in Nini v. Cravens & Cage Co. (Tex. Civ. App.) 253 S. W. 582; Wells v. Mackay Telegraph-Cable Co. (Tex. Civ. App.) 239 S. W. 1001; J. P. Webster & Sons v. Utopia Confectionery Co., 254 S. W. 123;

Hardee v. Adams Oil Association (Tex. Civ. App.) 254 S. W. 602.

[11] The fact that Harvey recorded his declaration of trust in the deed records of Gray county does not affect Braden's position in any manner. Our registration laws provide that all deeds, mortgages, conveyances, deeds of trust, bonds for title, covenants, defeasances, or other instruments of writing concerning any lands or tenements or goods and chattels, or movable property of any description are authorized to be recorded (V. S. C. S. art. 6823), and that all deeds or other contracts relating to real estate shall be recorded in the county where the land is situated (Id. art. 6827). The declaration of trust recites "that the said James I. Harvey, the owner of and about to acquire certain property in the state of Texas, valuable for oil and gas, and thought to be valuable for the same, will hold said property and all funds now or hereafter acquired, etc." No land, either in Gray county, Tex., or in any other county, is described in it. Then why record it in the deed records of Gray county? Or in fact, any county? No real or personal property then owned or to be thereafter owned by him "of any description" is found in it. It is not such an instrument as the law contemplates shall be recorded, and is therefore not constructive notice to any one of any interest claimed by any person in any property, real or personal, then situated in or thereafter to be held in any county in Texas.

[12] It is insisted that the evidence is insufficient to sustain the finding of the jury that Read, Hedrick, and Osborne were members of the partnership. Read told Braden that if the well should come in a producer he, Read, would have plenty of money so that he would not have to work any more during the rest of his life. He told Tucker that he was a stockholder in the company; he spent several days around the well, and on one occasion insisted in straightening up some titles; he got samples of cuttings showing the log of the well, and visited it frequently during 1922. He says that he loaned Harvey $1,000 for personal expenses of himself and family, and received as collateral a certificate of stock in the company of 25,000 shares, of the par value of $1 per share. He admitted that the certificate was issued to him in his own name. He says he turned the stock back, but it was after his attorney had advised him that he might be held liable as a partner and about the time it appears that the company was in failing condition. The jury was not required to believe his statement as to how he held the stock. The evidence is also amply sufficient to show that Osborne and Hedrick were stockholders and members of the company.

We find no reversible error, and the judgment is affirmed.