## INDUSTRIAL LUMBER COMPANY v. TEXAS PINE LAND ASSOCIATION.

### Decided February 5, 1903.

**1.—Joint Stock Company—Partnership—Voluntary Association.**

A joint stock company or voluntary, unincorporated association, composed of a great number of persons whose interests are evidenced by certificates of stock, and which transacts its business through trustees, with prescribed powers, is a partnership, subject to be sued as such, governed by the laws fixing partnership liabilities, as to third parties, and is distinguishable from an ordinary partnership only in the respect that the death or withdrawal of one or more members does not effect a dissolution, and that the stock can be bought and sold without affecting the integrity of the association.

**2.—Same—Restricting Personal Liability.**

Such voluntary association may contract with another so as to exempt the members or partners from personal liability, and to require such other party to look alone to the common holdings of the association, since such contract is not in violation of any rule of law or public policy, and the common law right to so contract is not affected by the statutory provisions prescribing how a limited partnership may be formed. Rev. Stats., arts. 3583-3605.

**3.—Same—Contract—Lien.**

Where there is a contract entered into by such voluntary associations which requires the latter to look alone to the common property for indemnity and releases the members from personal liability, this does not necessarily create a lien upon the property of the concern. If the contract evinces a purpose that a lien should exist, but falls short of its creation, the courts will carry out such purpose and declare the lien, if it appears that a lien was intended or promised upon some specific property. See facts held not to authorize the conclusion either that a lien was intended by the parties, or that equity would imply one from the facts.

Appeal from the District Court of Hardin. Tried below before Hon. L. B. Hightower.

*John Broughton, Cruse & Nall,* and *Smith, Crawford & Sonfield,* for appellant.

*Lanier & Martin,* for appellee.

GILL, ASSOCIATE JUSTICE.—This is an appeal from a judgment sustaining demurrers to the plaintiff's amended original petition. The pleading is very lengthy and it is not deemed necessary to set it out in full. In view of the conclusion reached by us a statement of its substance will be sufficient for the purposes of this opinion.

It was averred that plaintiff, the Industrial Lumber Company, a Texas corporation, entered into a written contract with the Texas Pine Land Association by which the last named concern leased to plaintiff a certain sawmill at Liberty, Texas, and certain land on which it was situated, for the term of two years from April 1, 1898, and bound itself among other things to cut and furnish at the sawmill for a named price a sufficient number of logs to enable the mill to be operated at its full capacity during the full term of the lease. That plaintiff took possession of the mill and operated it during the term, but the defendant

association failed to furnish a sufficient number of logs to enable plaintiff to run the mill at its full capacity, whereby much time was lost, to plaintiff's damage, for which judgment is asked. It is further averred that a short time before the expiration of the lease plaintiff procured a two years extension of the contract according to its terms whereby both plaintiff and defendant association were bound as before. That as required in the first instance plaintiff deposited with the association the sum of $5000 to secure it against default on the part of plaintiff, said sum to be returned to plaintiff at the expiration of the lease or extension in case plaintiff had complied with its obligation. That in pursuance of the agreement of extension plaintiff, with the full knowledge and acquiescence of defendant association, put into the sawmill and upon the property covered by the lease certain necessary improvements and repairs, permanent in their nature, at the reasonable cost of over $15,000, and for this plaintiff also prays judgment by reason of the facts hereinafter set out.

It is further averred that on the —— day of ———, 18—, after the expiration of the original lease, the defendant association sold and conveyed to John H. Kirby and to the Kirby Lumber Company and the Houston Oil Company (two Texas corporations) all its holdings in Texas, including the property leased to plaintiff and all the lands from which the association expected to get logs to be furnished for the operation of the mill. That the vendees ousted plaintiff from its holdings, and the association by reason of such sale ceased to be a going concern and by that act has rendered it impossible for the association to comply with the terms of the lease. Large damages are averred to have resulted from this breach by the association growing out of its failure to furnish logs for the two years extension of the lease, and for this plaintiff prays damages also.

John H. Kirby and the two Texas corporations above named were made parties defendant for the purpose of foreclosing an asserted lien upon all the property conveyed by the association to them and plaintiff also sought by injunction to hold in the hands of Kirby, the Houston Oil Company and the Kirby Lumber Company all the consideration for the purchase from the association which had not theretofore passed.

lien, as before stated, was asserted against all the property purchased and was averred to exist by reason of the following facts: That the Texas Pine Land Association was a voluntary association or joint stock company, the membership of which is very numerous and the names of all the members are unknown to plaintiff, and all are alleged to be nonresidents of this State. That the membership is so large it is impractible if not impossible to make each and all of them parties to this suit. That the Texas Pine Land Association was organized for the purpose of and was engaged in the investment of capital in pine and other timber lands in Texas and in cutting and selling logs and operating sawmills, trams and booms and operating a general lumber and timber business. That the business of the association had been intrusted by

its members to Thomas L. Nelson, Francis Peabody, Jr., and Noah W. Jordan (residents of Boston, Mass.,) as trustees who were fully empowered to transact all the business of the association and to make all necessary contracts, sales and bargains in furtherance of the purposes of the association. But the power of these trustees was specifically limited by the following stipulation embodied in the written instrument, denominated "declaration of trust," which was the source of their authority:

"Article 13. The trustees shall have no power to bind the shareholders personally, and in every written contract they shall enter into reference shall be made to this declaration of trust. And the person or corporation so contracting with the trustees shall look only to the funds and property of the trust for the payment under such contract, or for the payment of any debt or damage judgment or decree or of any money that may otherwise become due and payable by reason of the failure on the part of the trustees to perform such contract in whole or in part, so that neither the trustees nor the shareholders present or future in this trust shall be personally liable therefor."

That in pursuance of this clause there was incorporated in the original lease contract the following clause:

"It is further distinctly understood that the party of the first part is a joint stock association without personal liability of its stockholders, and that for any debt, demand or damage arising under this instrument against the party of the first part, the party of the second part or other party in whose behalf such demand may arise shall look exclusively to the trust property in the hands of the trustees of the party of the first part, and upon no account and in no event shall there be any individual liability of the shareholders, party of the first part or its trustees."

The large amount of lands and other property in Texas owned by the association is specifically set out and described in the petition. It is alleged that the association owned all the lands for miles around the sawmill site, so that in no event could plaintiff have operated the sawmill after the sale of its property by the association. That as above stated plaintiff had agreed in set terms not to hold the members of the association personally liable but to look alone to the trust property for the satisfaction of its demands, and that as a result it has no remedy except against the property and funds of the concern. That the contract of lease itself evinces a purpose on the part of the parties thereto to charge the property with a lien, and that if that does not do so an equitable lien clearly arises in favor of plaintiff by reason of the declaration of trust, the terms of the lease and the attendant facts averred.

It is further alleged that Kirby and the two defendant corporations had actual notice of all the facts and the existence of plaintiff's demands, and that same were secured by a lien at the time of and before the purchase by defendants. A foreclosure of the asserted lien is prayed for against the trust property in the hands of the defendants.

The Kirby Lumber Company and the association interposed an exception to that portion of the petition which seeks to foreclose a lien upon

land not leased to plaintiff in 1898, and further that the petition showed that the land had been conveyed before the beginning of this suit and therefore no lien existed.

These exceptions were sustained by the court, whereupon plaintiff filed the following motion: "And now comes the plaintiff and dismisses all that part of the cause of action seeking a recovery against the Houston Oil Company, the Kirby Lumber Company, or anyone else for the moneys, stocks and bonds or other things of value alleged to be the consideration passing to said Texas Pine Land Association for the lands described as sold to the said oil company and lumber company of date July 31, 1901, because it now alleges that all of said consideration passed to said association before the filing of this suit, and has been removed from this State in the shape of money and is beyond the reach of plaintiff, and plaintiff says that all the property of said association had been removed from this State before the institution of this suit except the land herein involved, and that it is the only source through which it can collect any judgment that may be rendered. And plaintiff does not seek to recover any money judgment against said association, as an individual, or any of the trustees as members, but only such judgment· as may be a charge upon the real estate described in plaintiff's petition."

The motion being heard by the court was allowed. Plaintiff also dismissed as to defendant John H. Kirby and also as to the three named trustees in their individual capacities, they having answered both for the association and for themselves. Thereupon defendants renewed their general demurrers, which the trial court sustained. Plaintiff refusing to amend, the action was dismissed, and from the judgment of dismissal plaintiff has appealed.

Before taking up appellant's assignments of error it is necessary first to dispose of a point made by appellee which by reason of its importance is entitled to precedence. Appellee contends that appellant's motion to dismiss was a practical dismissal of his entire action and that the trial court properly sustained general demurrers to a petition which after the dismissal contained nothing but assertions of liens with no money or other personal demand as a basis therefor. We are of opinion that this contention places a strained and unnatural construction upon the motion to dismiss. We gather from its terms that its primary purpose was to eliminate from the case all questions as to the funds due the association by the other defendants for the purchase of its Texas properties. The remainder of it did no more than the amended original petition, namely, concede that plaintiff was entitled to no money judgment against any of defendants enforceable against them personally, but only such judgment as was necessary to support and foreclose the asserted liens and subject the property of the trust to the satisfaction of plaintiff's demands. Any other construction does violence not only to the motion itself, but to the manifest theory upon which the suit was brought and is sought to be maintained.

The question which includes all others necessary to be disposed of on this appeal is, did the court err in sustaining the general demurrer to plaintiff's amended original petition?

Plaintiff seems to rest his cause of action upon two theories and asserts a right to recover upon either the one or the other. First. Where a person, or association of persons, contract in lieu of personal liability that the property of such person or association shall stand pledged to the performance of such agreement and to the payment of any money demand of whatever nature which may result from such contract or grow out of its breach, an equitable lien is thereby created upon the property. Second. Inasmuch as by the very nature of the association as created by the declaration of trust there could be no personal liability, and the property of the association could alone be looked to by the creditors of the concern, such property became a trust fund in the hands of the trustees, chargeable with a lien in favor of its creditors, and this lien followed it into the hands of purchasers with notice whereby such sale and purchase the association went out of business and ceased to be a going concern.

In order to clearly and correctly determine whether either of these propositions can be maintained it is necessary first to ascertain the nature of the association as a legal entity, and second, the legal effect of the contract of lease with its stipulations exempting from liability the individuals at interest as parties of the first part. In disposing of these questions we will pretermit all inquiry as to whether the portions of plaintiff's demands which are of the nature of unliquidated damages could in any event be declared to be secured by an equitable lien, and shall dispose of the case as though the suit in all other respects was free from question.

It appears from plaintiff's allegations that the defendant association is a joint stock company or voluntary unincorporated association, composed of a great number of persons whose interests are evidenced by certificates of stock and which transacted its business and managed its affairs through named trustees with prescribed powers.

Such concerns are uniformly held in the United States to be partnerships, subject to be sued as such and governed by the laws fixing partnership responsibility. 22 Enc. of Law, 2 ed., p. 637; 1 Cook on Stock and Stockh., sec. 508; 1 Thomp. on Corp., sec. 14, p. 16.

They are distinguishable from partnerships as that term is ordinarily used only in the respect that the death or withdrawal of one or more members does not effect a dissolution and that the stock can be bought and sold without affecting the integrity of the concern.

In these respects they partake of the nature of corporations, but these peculiar characteristics do not affect the nature or extent of the individual liability as to third parties.

The agreement among members or between themselves and the trustees appointed to manage the affairs of the concern that no personal liability should rest upon the members would not have the purposed effect

any more than such an agreement between the members of an ordinary partnership would accomplish that end. 22 Am. and Eng. Enc. of Law, pp. 143, 173.

Our statute prescribes how a limited partnership may be constituted, and compliance with its terms requiring certain evidences of its peculiar nature to be placed of record puts the world on notice of the nature of its liability. Rev. Stats., title 76.

But it does not follow by reason of the existence of this statute that either an ordinary partnership or an association of individuals may not contract with one another that as to liabilities growing out of the particular transaction evidenced by the contract, the partners or the members of the association shall be exempt from personal liability, and that the other contracting party must look alone to the common holdings of the firm or association for indemnity. The statute merely confers a power. It does not limit or destroy any common law right. We are aware of no rule either of law or public policy which forbids the making of such a contract. 1 Cook on Stock, sec. 216; 22 Am. and Eng. Enc. of Law, p. 173; Lindley on Part., 377, 378, 382.

These things being true it is plain also that such contract does not necessarily create a lien upon the property or any part of it. Lindley on Part., p. 380. Whether it does or not depends upon the intention of the parties as expressed by the language of the instrument itself or gathered from that and attendant circumstances. If the instrument itself declares the lien it needs no aid from a court of equity. If the instrument evinces a purpose on the part of the parties that the lien should exist, but falls short of its creation, proceeding upon the maxim that equity considers as done that which ought to be done, the courts will carry out the just purposes of the contracting parties. 11 Am. and Eng. Enc. of Law, 2 ed., p. 123. But it must appear that a lien was intended or promised upon some specific property. 3 Pom. Eq., sec. 1235.

With these rules and principles in mind an inspection of the contract of lease convinces us that a lien was neither created nor promised. If read in the light of the declaration of trust, to which it refers, and especially in view of the surrounding facts at the date of its creation as disclosed by the petition, the correctness of this construction becomes very plain. The association is averred to have owned vast quantities of land and to have been engaged in the cutting and selling of timber and lumber and in the operation of trams, booms and sawmills situated in various counties in the State. To hold that such a contract, in the absence of specific language to that effect, created a lien on all the property of the concern in Texas would lead to the absurd conclusion that the logs being cut and sold were subject thereto. That other mills and land leased by other parties under the general purposes of the concern were also covered and if subsequent in date would be subject to such lien.

We do not mean to say that a contract involving such consequences might not have been made, but are of opinion that these facts go far to show that no such purpose was in the minds of the parties here. It is

well to remember in this connection that the trustees were not empowered to make any other sort of contract than one exempting the members from liability, and that of this restriction plaintiff was aware, and hence must have known that all other contracts made by the concern in Texas must have been couched in like terms.

Does the fact that the members of the association were exempted from individual liability and that plaintiff was bound by the contract to look to property held in common by the members of the concern of itself authorize a court of equity to imply a lien upon the common property? If the contract of lease had pointed out specific property to which the lessee should look there might be much force in appellant's position on this point. But the case before us presents a different aspect. No property was described except the property leased, and that simply for the purposes of the lease feature of the contract. The property of the association was vast in amount, scattered over many counties, and consisted of realty and personalty. It may be inferred from the petition, if not in fact alleged, that much of the property was then involved in like contracts with others and much of the personality exposed to daily sale. We do not think the facts alleged authorize the conclusion either that a lien was intended by the parties or that equity should imply one from the facts.

We have said the contract was not one forbidden by law, and this means of course that thereunder plaintiff must be accorded some effective remedy. In holding that no lien existed plaintiff's rights are not precluded. It seems to us the most natural and reasonable construction to place upon the contract would be to hold that the exemption from personal liability simply gave direction to any execution which might be issued on any judgment procured by plaintiff against the concern, its members or representatives. Thus if plaintiff had procured judgment against the association and it had pleaded in defense the restrictive clause of the contract the judgment should have directed the execution to be levied only upon firm property, and if it should be made to appear that the other defendants had purchased the property of the association with knowledge of a purpose on its part to defraud its creditors, such property, under well settled rules of law, could nevertheless be subjected to the debt. It is perhaps true also that plaintiff has a remedy against the trustees personally for misappropriating the funds of the association. Lindley on Part., p. 383. If, however, we are in error in holding that the contract of personal exemption was valid, then plaintiff had the right under appropriate pleading to a personal judgment against each member of the association or such members as he could identify and serve with process, with right to general execution against them and execution against the firm property as to all. So that in any event the demurrer was properly sustained unless plaintiff's proposition is sound to the effect that parties purchasing all the assets of such a concern are responsible for its liabilities and that a lien exists upon such assets to secure such claims.

The funds and property of a defunct corporation is a trust fund in the hands of the directors for the benefit of the stockholders and creditors. It is also true that when one corporation buys out the property of another corporation whereby the first concern becomes defunct, the purchaser becomes responsible for the debts of the defunct concern at least to the value of the property purchased, but we are of opinion this rule as to corporations can not be applied to the association in question, which as to third parties is in all essential respects a mere partnership.

Upon the proposition that irrespective of whether the contract itself sufficed to create a lien or would authorize a court of equity to declare one, the nature of the association and the nature of plaintiff's contractual relation did nevertheless create one. Plaintiff relies on the case of Society of Shakers v. Watson, 68 Fed. Rep., 730. In that case the appellant was composed of a membership of about 100, consisting of minors as well as adults, its membership constantly shifting and changing. None of the members individually owned any interest in the property of the society, nor were the members represented by shares. It was neither a corporation nor joint stock company, was not engaged in business for profit, and the common holdings were intrusted to and managed by trustees. These latter borrowed money which went to the betterment of the society's holdings. The court held it was not a partnership, that there could be no individual liability, and that from all the facts it was manifest the parties intended the claim should constitute a lien against the property of the society. Even if we should regard the case as binding authority it is nevertheless clearly distinguishable from this in the respects above mentioned, and the court was doubtless correct in holding that under the peculiar facts of that case a lien existed. Such an association is neither a corporation nor a partnership. 22 Am. and Eng. Enc. of Law, p. 53.

So in Bank v. Eaton, 100 Fed. Rep., 8, on which the plaintiff also relies. The case is much like the one at bar, but with this distinction: the articles of trust specifically declare that the money borrowed and for which the suit was brought should constitute a lien upon the trust property then existing and thereafter to be acquired. The case cited contained a fact element which is lacking in the one before us.

We do not deem it necessary to discuss the other cases cited by appellant. We do not regard them decisive of the question determined here. That partnership creditors have no lien upon partnership assets is well settled, and the mere fact that the partners have seen fit to contract against personal liability does not vary the rule.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.