## VICTOR REFINING CO. et al. v. CITY NAT. BANK OF COMMERCE et al. (No. 2284.)

(Court of Civil Appeals of Texas. Amarillo. March 19, 1924. Rehearing Denied June 18, 1924.)

**1. Contribution ⊗⇒6 — Defendant may show that plaintiff was not legally bound to pay debt.**

One sued for contribution may show that plaintiff was not legally bound to pay debt, and hence is without right of contribution.

**2. Judgment ⊗⇒666—Judgment against one seeking contribution not conclusive if one against whom sought was not party to suit, notified of its pendency, or given opportunity to defend.**

Judgment against one seeking contribution is not conclusive, if one against whom sought was not party to suit, notified of its pendency, or given opportunity to defend.

**3. Appeal and error ⊗⇒793—Original defendants' appeal from judgments against them dismissed without prejudice to interpleaded defendants' rights to attack such judgments.**

Where interpleaded defendants, in answering original defendants' suit for contribution, pleaded same facts as did original defendants, in answer to plaintiffs' claim, to show no personal liability of any defendants to plaintiffs, though latter sought no judgment against interpleaded defendants, original defendants' appeal from plaintiffs' judgments against them

---

⊗⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

will be dismissed on their motion, after settlement of matters in dispute between them and plaintiffs, without prejudice to interpleaded defendants' rights, on their appeal from original defendants' judgment against them, to question correctness of judgments against original defendants, so far as they affect interpleaded defendants.

**4. Corporations ⊕⇒661(6) — Foreign corporation's failure to offer proof of permit to do business requires reversal of judgment for it.**

Failure of foreign corporation to offer proof in support of allegation that it had permit to do business in state requires reversal of judgment for it.

**5. Joint-stock companies and business trusts ⊕⇒15(1)—Notice to creditors of provisions in articles of association or trust agreement exempting shareholders from personal liability, insufficient.**

While exemption of members of joint-stock association from personal liability for its debts may be secured by express contract with party dealing with association, mere notice to creditors of provision in articles of association or trust agreement against personal liability of shareholders is insufficient, in view of legislative policy disclosed by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6126–6154, especially article 6153.

**6. Partnership ⊕⇒101—Partners called on in suit, in which other partners are not parties to pay large amount of firm's indebtedness, may call on copartners for contribution without general accounting.**

General rule that partner discharging firm debt may not sue for contribution, except on general accounting, is one of procedure, and does not prevent partner called on, in suit to which other partners are not parties, to pay large amount of indebtedness against partnership from calling on copartners to help, and where hundreds of parties were brought in at great expense, and trial court spent much time in balancing liabilities of various defendants, as to extent of whose liabilities, if any, no question was raised, judgments will not be disturbed and parties required to retry such issues in pending receivership case.

On Motion for Rehearing.

**7. Appeal and error ⊕⇒742(1)—Proposition not germane to any assignment, not considered.**

Proposition not germane to any assignment of error will not be considered.

**8. Appeal and error ⊕⇒835(2)—Assignment first presented in motion for rehearing, not considered.**

Assignment of error, first presented in motion for rehearing, will not be considered.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suits by the City National Bank of Commerce and others against the Victor Refining Company and others, in which additional defendants were interpleaded. From judgments for plaintiffs against original defendants,

and for latter against interpleaded defendants, all defendants appeal. Appeal of original defendants dismissed, and judgment against interpleaded defendants reversed and cause remanded as to them in part.

Taylor & Taylor and J. L. Lackey, all of Wichita Falls, for appellants.

Bullington, Boone & Humphrey, of Wichita Falls, for appellees H. Beach and others.

Carrigan, Montgomery, Britain Morgan & King, of Wichita Falls, for appellee City Nat. Bank of Commerce and others.

Weeks, Morrow & Francis, of Wichita Falls, for appellee J. I. Staley & Co.

Cox, Fulton & Myers, of Wichita Falls, for appellee Progressive Production Co.

John P. Marrs, of Wichita Falls, for appellee Reader.

Bonner, Bonner & Sanford, of Wichita Falls, for appellees Perham and others.

BOYCE, J. Six separate suits were filed in the district court of Wichita county, by as many different plaintiffs, to wit: City National Bank of Commerce of Wichita Falls, the Progressive Production Company, alleged to be a foreign corporation, with permit to do business in Texas, and four others not necessary to name, against the Victor Refining Company, alleged to be a partnership organized as a joint-stock association. H. Beach and some 12 or 15 individuals were made defendants in these petitions, on allegations that they were members of the partnership and jointly and severally liable to the plaintiffs. The causes of action sued on in each case were separate and distinct. H. Beach and his individual codefendants, who will be hereinafter referred to as the original defendants, answered in these cases and interpleaded several hundred other persons on allegations that such persons were stockholders in said association, and, if there was any individual liability to the plaintiffs on the respective causes of action in suit, such liability was the common obligation of all such stockholders, and the original defendants would be entitled to contribution from the interpleaded defendants in the proportion to the respective amounts of stock owned by them. It was further alleged that the Victor Refining Company was insolvent and its assets in the hands of a receiver. Wherefore the original defendants prayed that, in the event the plaintiffs secured judgment in said suits, then an accounting be had as to the respective liability of the original defendants and of the interpleaded defendants inter sese, and judgment for contribution rendered accordingly. A great many of these interpleaded defendants answered. These answers made common cause with the answer of the original defendants as against the plaintiffs' suits, the defenses urged being: (1) Plea in abatement on account of the pendency in another court of receivership proceedings in

which the assets of the Victor Refining Company were being administered; (2) that the defendants were not partners, and there was no individual liability against the holders of stock in the Victor Refining Company for its obligations; and (3) that the plaintiffs dealt with the Victor Refining Company, in the transactions on which their claims arose, with knowledge of the provisions of the trust agreement under which the Victor Refining Company was operated, exempting the shareholders from personal liability, and therefore could not hold them liable.

All these cases were consolidated and tried together, the trial resulting in judgments for the respective plaintiffs against the Victor Refining Company, and the original defendants, in various amounts aggregating about $85,000; and judgment in favor of the original defendants over against something over 300 of the interpleaded defendants, for contribution in proportion to the respective amounts of the capital stock of said association owned by said respective parties. It was ordered that the judgment be certified to the court in which the receivership was pending and execution stayed until the affairs of said association were fully administered in said court and the judgments credited with whatever amounts they were entitled to in the final distribution of the assets of said insolvent association.

Two separate motions for new trial were filed, the original defendants joining in one motion and 38 interpleaded defendants in the other. The two motions, however, were identical in terms. The original defendants perfected appeal by cost bond, payable to the plaintiffs alone. On the day after this appeal bond was filed, the interpleaded defendants filed their appeal bond for costs, payable to the original defendants alone.

The original defendants have not briefed the case, but file a motion to dismiss the appeal, stating in this motion that all matters in dispute, as between them and the plaintiffs, have been settled. These original defendants insist that the assignments of the interpleaded defendants attack only the judgment for plaintiffs and do not in any way attack the judgment of the original defendants over against the interpleaded defendants, and that since the bond of the interpleaded defendants was not payable to the plaintiffs, such defendants have no right to attack that part of the judgment, so that there is left nothing for this court to consider. The several plaintiffs in the court below, "appearing as amicus curiæ," also move to dismiss the appeal, stating that a settlement has been made between them and the original defendants. The interpleaded defendants have briefed the case and insist that they have the right to have their assignments determined. They say that the original defendants have, since such alleged settlement,

begun to levy executions on their property to enforce the judgment for contribution against them.

From the foregoing statement it will be seen that the first question to be disposed of concerns the questions of the effect of the motion made by the original defendants to dismiss their appeal. In this connection it is pertinent to state the nature of the questions raised by the assignments of the interpleaded defendants. One of these, presented as fundamental error, is that the judgment in favor of the Progressive Production Company is erroneous because there is no proof that said corporation had a permit to do business in Texas. The others present, in various ways, question as to whether the court committed error in the following matters: (1) In refusing to admit evidence to show that the various plaintiffs had knowledge, before the obligations of the Victor Refining Company to them were incurred, of the provisions of the trust agreement under which the said company was organized, to the effect that the shareholders thereon would not be individually liable for the obligations of the association. (2) In holding the several defendants liable as partners, it being contended that since the articles of agreement, creating the Victor Refining Company, expressly prohibited the trustees, agents, or representatives of said company from creating any personal liability against the several shareholders, any attempted acts on the part of such trustees or agents of the Victor Refining Company to do so would be unenforceable because of lack of authority on the part of such persons to bind the shareholders, by such act. (3) In overruling the plea in abatement.

[1-3] The right of contribution exists only on compulsory payment of the debt by the one claiming the right. Glasscock v. Hamilton, 62 Tex. 143, 151; 13 C. J. p. 823, § 6. It follows that when one is sued for contribution, he may show that the other party was not legally bound to pay the debt, and consequently is without right of contribution. A judgment against one seeking contribution is not conclusive if the one against whom contribution is sought was not a party to the suit, or notified of its pendency and given opportunity of defending. Glasscock v. Hamilton, supra. The original defendants defended in the trial court, claiming that there was no liability on their part for the payment of plaintiffs' claims against the Victor Refining Company. The plaintiffs sought no judgment against the interpleaded defendants, but such defendants, in answering the suit of the original defendants as against them, pleaded the same facts as did the original defendants in answer to plaintiffs' claim, to show that there was no liability, joint or several, on the part of any of the defendants, personally, for the payment of the obligation sued on by the plaintiffs. The interpleaded defendants un-

questionably had the right to have these issues tried out, both in the trial and appellate courts. They were seeking, in a proper way, under the circumstances to have determined the question of common liability as a basis for the claim of the original defendants for contribution. If by taking advantage of their position in the suit in its relation to the plaintiffs the original defendants should deprive the interpleaded defendants of the opportunity of litigating an issue of common liability to the plaintiffs, then they would be in no position to insist that the judgment against them was conclusive as to the interpleaded defendants. But we think the interpleaded defendants have such interest in the defense against the plaintiffs' suit that they are entitled to present any assignments that question the right of plaintiffs to the judgments rendered, in so far as it affects them. Therefore the appeal of the original defendants from the judgment as to them will be dismissed, but without prejudice to the right of the interpleaded defendants to question on this appeal the correctness of said judgments as against the original defendants in so far as they may affect these interpleaded defendants.

[4] The failure of the plaintiff the Progressive Production Company to offer proof in support of the allegation that it had a permit to do business in the state of Texas requires a reversal of that part of the judgment as against these interpleaded defendants. Taber v. Interstate Building & Loan Association, 91 Tex. 92, 40 S. W. 954; Rexall Drug Co. v. Butler Bros. (Tex. Civ. App.) 185 S. W. 989; Levinson v. Montrose Oil Co. (Tex. Civ. App.) 240 S. W. 1047.

[5] All the defendants, on the trial, tendered evidence to show that prior to the incurring of the indebtedness of the Victor Refining Company to the several plaintiffs, certain correspondence had been had between such company and each of said parties, and that on the letter heads of the Victor Refining Company delivered to the plaintiffs in the course of such correspondence was the following statement:

"This is a joint-stock association. The articles creating it vest control of its affairs in a board of directors, acting under a declaration of trust, recorded in the deed records of Wichita county, Texas, reference to which is here made, which provide that the entire association assets shall be charged with the payment of its liabilities and which exempts the directors and shareholders from liability for the same. Victor Refining Company, 1008 City National Bank Bldg, E. T. Brelsford, General Manager, R. H. Brown, Secretary & Treasurer."

The articles of association under which the Victor Refining Company was doing business provided: For the formation of "an unincorporated joint-stock association, to be known and styled as Victor Refining Company"; the character of business it was to transact; the amount of its capital stock, to be represented by certificates of stock transferable as is the stock of a corporation; that the management of the affairs of the company should be in the hands of a board of trustees, elected by the shareholders annually; that such trustees should have general control of the business of the company, with power to appoint managers, agents, servants, and employees; and that—

"The trustees shall have no power to bind the shareholders or members personally, and in every written contract they shall enter into relating to the business of this company, its property or any part thereof, reference shall be made to said declaration of trust; and the person, firm or corporation, so contracting with them shall look only to the funds and property, legal and equitable of the company, under said contract, for the payment of any debt, damage, judgment or decree, or of any money that may become due and payable in any way by reason thereof. And neither any of the trustees nor the shareholders, present or future shall be personally liable therefor or for any debt incurred or engagement or contract made by the board of trustees, or any officer, agent or servant acting under them on behalf of the company. Furthermore, the funds and property of the company of every character shall stand primarily charged with the burden of paying any claim or money demand established or existing on account of the operations and business of the company, whether founded on contract or tort, to the end that the members of the company may be protected from personal liability on account thereof."

The said articles of association also provided that each board of trustees should elect its president, vice president, secretary, treasurer, and that—

"The trustees, in their capacity as such, may sue and be sued in any court of law or equity, or the company may sue and be sued in the company name, as provided for by the statutes of Texas."

It was also provided that a declaration of trust, in accordance with such articles, should be executed by the trustees. Such a declaration of trust, which contained the provisions above quoted, was executed and duly recorded in the deed records of Wichita county. The court excluded the evidence referred to, and both sets of defendants presented assignments of error to such action.

It is conceded that the effect of this instrument was to make the shareholders in the joint-stock association partners, so far as liability to creditors is concerned. The question here presented is whether a person, dealing with the association, with notice of these provisions, is nevertheless entitled to hold the shareholders to personal liability for the obligations of the association.

It has been generally accepted as the law

that exemption from personal liability, in such cases, may be secured by express contract with the party dealing with such an association. Industrial Lumber Co. v. Texas Pine Land Association, 31 Tex. Civ. App. 375, 72 S. W. 878; Hardee v. Adams Oil Association (Tex. Civ. App.) 254 S. W. 602; Wrightington's Unincorporated Associations, § 31. The following authorities may be cited as holding directly, or by implication, that this is the only way in which personal liability of the members may be avoided: Wells v. Mackay Telegraph Cable Co. (Tex. Civ. App.) 239 S. W. 1006; West Side Oil Co. v. McDorman (Tex. Civ. App.) 244 S. W. 167; 23 Cyc, 474; 22 Am. & Eng. Enc. of Law, 173. The statements in the cases cited were not, however, necessary to decision on the facts before the court. There are also authorities in which it is said by way of dicta that one dealing with a partnership, with actual notice of the limitation of personal liability of some of the partners in the association, cannot hold the members liable beyond the terms of such limitation. Saufley v. Howard, 7 Dana (Ky.) 367; Warner v. Beers, 23 Wend. (N. Y.) 150; Lomme v. Kintzing, 1 Mont. 290; Nichols v. Chearis, 4 Sneed (Tenn.) 230. In the case of Warner v. Beers, supra, the following is quoted from Collier on Partnerships, p. 214:

"When a creditor has notice, that by an arrangement between partners, one of them, though appearing to the world as a partner, shall not participate in the loss, and shall not be liable for it, the creditor will be bound by the arrangement."

See, also, Bates on Partnership, § 323.

If the principle would apply to the ordinary partnership, it would seem to follow that it would hold good when liability is sought to be enforced against one as a partner because of his membership in a joint-stock association. The law-writers, however, have been chary of making any very decided statements as to the effect of mere notice to creditors of the provision in the articles of association or trust agreement against personal liability of the shareholders. Wrightington, in his work on Unincorporated Associations (section 29), says:

"It is familiar law that partners may, by agreement, modify as between themselves, their common-law obligations, but that such modifications will not be binding on those who deal with the firm, without notice thereof. It is usually said that they are binding on those who do have notice. When we come to apply this rule to the highly developed modern association, organized under a declaration of trust in which it is 'desired to abolish all personal liability, many courts have hesitated to say, that mere notice is sufficient."

It is said in Fletcher's Cyclopedia of Corporations, § 6172, that—

"If the agreement (the trust agreement) be construed as creating a partnership among the associates, the partners ordinarily are personally liable and such a provision is of no effect unless the other party to the contract had notice thereof at the time of the creation of the contract. The law on this phase of the question, so far as partnerships are concerned, has been stated as follows: 'In the absence of statute the only effectual way of limiting the liability of a partner would seem to be by stipulation with each creditor that he shall be paid only out of the funds of the partnership and that he shall not be entitled to require the individual partners to pay more than a certain amount. Certainly a limitation contained in the articles of association would not bind a creditor who had no notice of such limitation at the time when the indebtedness was incurred.' (Citing 22 Am. & Eng. Enc. of Law [2d Ed.] p. 172.)"

Judge Story, in his work on Partnerships (section 164), says:

"Without undertaking to assert in what cases such companies (joint-stock companies) may or may not be deemed illegal and the members liable to be treated as universally responsible, upon the ground of usurping and attempting to exercise the proper functions of corporations, which the Legislature or government is alone competent to establish, it may well deserve inquiry how far any stipulation in those articles and which limit the responsibility of the members to the mere joint funds, or to a qualified extent will be binding upon their creditors who have notice of such stipulation, and contract their debts with reference thereto. This question, many years ago, was presented to the Supreme Court of the United States but the cause went off without any decision upon the point. It seems to have been thought that such stipulation can in no wise operate as a limitation of the general liability of all the partners for all their debts, even though the creditors have full notice thereof (citing an English case to which we do not have access). It may, however, be still deemed an open question, whether creditors with such notice, can proceed against the members upon their general responsibility as partners, where they have expressly contracted only to look to the social funds; and whether if they have notice of the qualifying stipulation and contract with reference to it, it may not be easy to assign a reason why it does not amount to an implied agreement to be bound by it as much as if it were expressly agreed to. There is certainly nothing illegal in a creditor's agreement to such a limited responsibility as a qualification or condition of his contract and in many other analagous cases or contracts of this sort are deemed perfectly proper and unexceptionable."

In the case of McCarthy v. Parker, 243 Mass. 465, 138 N. E. 8, certain persons were transacting business in the name of the Lynn Glass Manufacturing Company, under a declaration of trust which provided against personal liability of the shareholders and that—

"The trustees shall have no power to bind the shareholders personally, and all persons, associations or corporations extending credit to, contracting with, or having any claim against

the trustees shall look only to the funds or property of the association for payment of any debt, damage, judgment or decree, or any money that may otherwise become due or payable to them from the trustees, so that neither the trustees nor the shareholders present or future shall be personally liable under or by reason of such order, contract or obligation."

The plaintiff, an attorney, brought suit to recover the value of legal services rendered the company, and sought to hold the shareholders personally liable as partners. This attorney had been employed by the association for some time and "knew the contents of the declaration of trust." The decision assumed that the shareholders "were partners as to all creditors, who did not expressly or impliedly contract only to look to the funds or property of the association for the payment of any debt, damage, or decree which might become due. or payable to them," but held that the shareholders were not responsible to plaintiff, saying:

"There is nothing contrary to the law as hereinbefore declared or to public policy which inhibits an agreement that a creditor in case of default in payment shall look exclusively to a fund for his reimbursement. Hussey v. Arnold, 185 Mass. 202, 70 N. E. 87. And there is no decision cited by the plaintiff or found by us that prohibits the doing of business through an agent with a limitation upon the individual liability of the principal, if the person who deals with such an agent does so with knowledge of the limited authority of that agent. Williams v. Milton, 215 Mass. 1, 6, 102 N. E. 355. We perceive no reason why the rule that one who deals with an agent with knowledge of his limited powers does so at his peril is not applicable to dealings with the agent of a copartnership, when the agent is also a partner. * * * Mussey v. Beecher, 3 Cush. 511; Vickery v. Richardson, 189 Mass. 53, 55, 75 N. E. 136."

In the case of Bank of Topeka v. Eaton (C. C.) 100 Fed. 8; 107 Fed. 1003, 47 C. C. A. 140, the note sued on contained recitals which were deemed by the court sufficient to impart notice of the limitation of the liability of the shareholders and of the trustees to bind them, and it was held that this fact established an implied stipulation limiting the bank's remedy to the general assets of the association.

In an early Pennsylvania case, Hess v. Werts, 4 Serg. & R. 356, 361, where suit was brought on notes executed in behalf of an association which bound the defendants to pay "out of their joint funds, according to their articles of association," and the defendants claimed exemption from personal liability, it was said:

"It is a general principle, that partners are liable to third persons, as for a personal debt. It is not merely the stock, they bring into the partnership, that is hazarded; but they are responsible to the extent of their individual fortunes; and such responsibility cannot be limited by any proviso in the articles of partnership, or agreement between themselves. But I see no reason to doubt, but they may limit their responsibility, by an explicit stipulation, made with the party with whom they contract, and clearly understood by him at the time. But this is á stipulation, so unreasonable on the part of the partnership, and affording such facility to the commission of fraud, that unless it appear unequivocally plain, from the terms of the contract, I will never suppose it to have been in the view of the parties," and in this case the defendants were held liable.

In the case of Hardee v. Adams Oil Co. (Tex. Civ. App.) 254 S. W. 602, plaintiff brought suit against the Adams Oil Association, an unincorporated joint-stock company, and some individual stockholders, whom she sought to hold personally liable, to recover rentals alleged to be due on a drilling rig. The contract for rental of this rig provided that plaintiff was to be paid certain cash and certain stock in the association. The articles of association provided that the shareholders should not be personally liable for debts contracted. It was held that when the plaintiff became a shareholder she was "charged with knowledge of the stipulations and agreements contained in the declaration of trust * * * and is bound by such declaration and agreement," and that she could not, for this reason, recover of the defendants individually money due for rental of the rig. The decision was also based on another and independent proposition.

It is held in cases such as Connally v. Lyons, 82 Tex. 664, 18 S. W. 799, 27 Am. St. Rep. 935, and Taylor v. Davis, 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163, that the trustee, acting in a pure trust, is personally liable although the creditor may have knowledge that he is in such matter acting in a trust capacity, and it is said in the case of Taylor v. Davis, that such liability will exist unless there is an express contract against it. But these cases may be distinguished from the case at bar. In such cases the trustee was the principal and there was no one else to bind, so that the contract was his personal contract. But there may be a case of true agency in the handling of the business of a joint-stock association of the character we are considering, even if the agents handling the business be other members thereof.

An instructive discussion of this question will be found in an article on "The Massachusetts Trust," written by Prof. Hildebrand of the Texas University, and appearing in the Texas Law Review, vol. 2, No. 2.

The most cogent reason against allowing exemption in such cases is that it is contrary to the policy of the laws of this state to permit the stockholders in such associations to secure such general exemption from liability for its obligations without the formation of a corporation or a limited partnership under the provisions of the statutory law. This is the question suggested in the

opening sentence of the quotation we have taken from Judge Story. It was, it seems, at one time a mooted question, at common law, whether unincorporated joint-stock associations, organized for profit, were not within themselves illegal. It was finally decided that they were not illegal; but the British Parliament, "after the famous South Sea Bubble speculation, which led to its enactment," passed laws restraining the formation of joint-stock companies. See Phillips v. Blatchford, 137 Mass. 512; Spotswood v. Morris, 12 Idaho, 360, 85 Pac. 1094, 6 L. R. A. (N. S.) 665 and note. While the laws of this state do not make such associations illegal, we have laws which, to some extent at least, attempt to define the rights and the liabilities of such associations, and the members thereof, and these, together with the laws authorizing the formation of corporations and limited partnerships, are inconsistent with the idea that exemption from liability of stockholders in a joint association may be secured in the way attempted in this case. McCamey v. Hollister Oil Co. (Tex. Civ. App.) 241 S. W. 689; The Harvey Co., Ltd., et al. v. Fred W. Braden, 260 S. W. 655, decided by this court. Our Legislature has provided for the organization of corporations, whose stockholders are exempt from personal liability, for the corporate obligations: but in connection therewith it has enacted elaborate provisions to protect the public in its dealing with such corporations and in the purchase of stock therein. These provisions require proof that the capital of the corporation has been paid in before it is permitted to do business, and provide means by which those who purchase stock offered for sale by such corporations may know that the proceeds of the purchase go into the capital of the company. Title 102 of our statutes is entitled "Partnerships and Joint-Stock Companies." Chapter 1 of this title provides for the organization of limited partnerships, under the provisions of which the special partners may be exempt from liability beyond the fund contributed by them in actual cash to the capital, upon compliance with the law governing the formation of such partnerships. Here again the Legislature has provided for the protection of the public, requiring publication of the terms of the partnership, the filing of a sworn certificate, from which the liability of the respective parties may be definitely established by reference to public records, and by requiring that the business shall be conducted by and only in the name of the general partners who are jointly and severally responsible for all of the obligations of the partnership. Chapter 2 of this title is devoted to joint-stock companies; this part of the law was enacted in 1907 (Laws 1907, c. 128), the title of the original enactment being:

"An act to authorize unincorporated joint-stock companies or associations to sue and be sued in their company or distinguishing name, and to prescribe the mode and effect of service on such unincorporated companies, and the legal effect of judgments that shall be rendered in such actions," etc.

Article 6153 of this part of the law provides that—

"In the event judgment shall be against such unincorporated company or association, it shall be equally binding upon the individual property of the stockholders or members so served," etc.

These laws disclose, we think, a legislative policy designed to protect the public against loss in the transaction of business by associations or persons organized to do business for profit without full personal liability for the obligations of the joint association unless such persons comply with the provisions of the laws above mentioned, whereby they may lawfully secure such exemption. All these purposes of the law may be circumvented if associations of this kind are permitted to secure exemption for personal liability for their membership by sufficient publicity and notice without the provisions of law. If notice be sufficient, it would be provable by any of the methods open to proof of such fact in any other case; and those dealing with such associations would have no defined and certain proof as to their rights against the parties engaged in such business. Evidently our lawmakers never contemplated such a situation, and we think it is contrary to the intent of our laws on this subject. We therefore overrule this assignment.

[6] The appellants also present a proposition to the effect that the original defendants have no right to judgment for contribution without first having a general accounting. This proposition is not germane to any assignment. However, we have considered it. It is a general rule that one partner, discharging a firm debt, may not sue for contribution except on general accounting. Hardee v. Adams Oil Association (Tex. Civ. App.) 254 S. W. 605 (4), and authorities; 20 R. C. L. 929. However, the rule is subject to exceptions and is not, as we understand it, a rule of substantive law, but one of practice and procedure, intended to prevent a multiplicity of suits and designed to have all controversies between all partners interested in the partnership business adjudged at one time. When one partner is called upon by a suit, to which other partners are not made parties, to pay a large amount of indebtedness against the partnership, there is no inherent injustice in allowing him to immediately call on his copartners to help him in the payment, though usually he should call for a general accounting as a prerequisite. In this case hundreds of parties were brought in, at great expense, and the trial court has spent much time in balancing the liabilities of the various defendants. The interpleaded de-

fendants did not raise this question below, and there seems to be no question as to the extent of the liability of the various parties, if they are liable at all. We do not think that the ends of justice will be subserved by undoing the work of the trial court and requiring the parties to go into the receivership case and try anew issues that have been already tried. The parties, if there is any further accounting, will have the privilege of taking into consideration thereat any payments that they may have made or be liable for under these judgments. We therefore overrule this proposition.

The appeal of the original defendants, from the judgment of the plaintiffs as against them, will be dismissed, as stated; the judgment of the original defendants against the interpleaded defendants for contribution in payment of that part of the judgment in favor of the Progressive Production Company will be reversed and as to such matter remanded; and the judgment as between such defendants will be in other respects affirmed.

### On Motion for Rehearing.

[7] Several assignments in the motion for rehearing complain of "holdings" that we did not "hold." For instance, in the fourth assignment it is said that—

"This honorable court held that notwithstanding the fact that the declaration of trust forbade the managers, officers, and agents of the company from creating any personal liability on the respective stockholders, such provisions were not effective even as between the stockholders and officers themselves, and hold'ng in effect that notwithstanding the fact that the officers, agents, and managers of said company were not bound by their solemn agreement in the declaration of trust made with the respective stockholders who bought the stock of the company on the strength of the contract in said declaration of trust, and notwithstanding the fact that the original plaintiffs did not sue and attempt to enforce the payment of the debts incurred on the common stockholders, that still the officers, agents, and managers in charge could, when the suit was brought against the company and them as individuals, interplead the common stockholders and require them to contribute to the payment of the debts incurred by said officers, agents, and managers."

The second and third assignments are somewhat along the same line. We did not so hold. None of the assignments of error on which the appeal is predicated present such a situation; they suggest no claim that the interpleaded defendants were not liable, if there was any personal liability at all on the part of the stockholders for the indebtedness of the association, to the same extent as the original defendants. The only reference in the appellants' brief to such question is that contained in the sixth proposition, as originally presented, which asserts that H.

Beach, "who was one of the organizers of the Victor Refining Company, and who was always an officer of said company, and one of the principal stockholders therein," could not recover of the other stockholders "for the reason that such action by him is prohibited by the articles of the association." This proposition was not germane to any assignment and was not considered. As a matter of fact, of the 18 original defendants, H. Beach was the only one who appears to have been an officer, agent, or trustee or had anything to do with the promotion of said association, and the other 17 of said original defendants being apparently "common stockholders" just like the interpleaded defendants and in the same boat with them.

[8] The sixth assignment in the motion for rehearing was not presented originally and is not considered.

The other questions presented in the motion were carefully considered by us in our original disposition of the case, and we do not deem it necessary to discuss them further.

Overruled.