## FLINT–TEXAS OIL–DRILLING TRUST v. BRIDGES. (No. 12206.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 16, 1929.

Rehearing Denied Dec. 21, 1929.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellant.

W. W. Shuler, of Wichita Falls, and Harwood Stacy, of Austin, for appellee.

CONNER, C. J. The appellee, Lee Bridges, instituted this suit on the 7th day of January, 1928, against the Flint-Texas Oil-Drilling Trust, an unincorporated association, with C. M. Van Benschoeten and others as trustees and individuals. The plaintiff alleged that on the 12th day of June, 1922, he contracted with the defendant association to drill and operate a drilling rig furnished by the defendant, and to give his exclusive time to work for defendant in accordance with their instructions on a lease owned by the defendant, "to receive wages at the prevailing wage for similar work in that particular territory, and the natural profits from the company's operation should then be divided, 75 per cent. to defendant, and 25 per cent. to plaintiff, which contract should remain in force until dissolved by agreement of both parties."

The petition described lands covered by the lease upon which plaintiff was to work, and further alleged that from the date of the original contract in 1922 until the filing of the petition therein on October 1, 1926, "when one of the defendant trustees notified this plaintiff that he was no longer needed, but that other trustees or officers of defendant company instructed said plaintiff to remain on the lease, which he has done until the filing of this petition.". It was further alleged that C. M. Van Benschoeten was the principal representative and trustee at Flint, Mich., and the checks received by him from time to time were signed, "Flint-Texas Oil Drilling Trust, by C. M. Van Benschoeten, Trustee," and the principal parts of correspondence and instructions were received by the plaintiff from said trustee; that as a bonus, on May 11, 1923, the defendant sent the plaintiff a certificate covering 500 shares, of par value of $1, in the Flint-Texas Oil-Drilling Trust, which had a total number of shares of $100,-000. It is further alleged that payments for wages were sent very irregularly, but with promise that back payments would be made; that on June 30, 1924, the defendant trust, through C. M. Van Benschoeten, "stated that they were doing the best they could to take care of plaintiff's salary, but it was impossible to pay any appreciable amount of money at that time, but that they would assign this plaintiff an undivided one-tenth interest in the lease, together with a monthly payment covering all expenses, which would be an amount sufficient to allow plaintiff to live sufficiently; that plaintiff accepted the proposition to take the undivided one-tenth interest as salary in lieu of past service and former contract," but that assignment had never been received; that the plaintiff, "acting under the new contract of June 30, 1924," had given his full undivided time on the leasing, drilling, pumping, and superintending the well, which work was "reasonably worth $200 per month, being the customary value of such work in this field, and which to date amounts to $7,-000."

Plaintiff further alleged that in order to keep the lease going he had to pay out of his own money for materials from time to time, and pay labor and repair bills, etc., in order to protect his own interest in the lease, in the approximate sum of $2,000. It was further alleged that on the 8th of February, 1927, he had filed a laborer's lien against defendant, which had been duly recorded, and which he prayed might be foreclosed, or in the alternative, if insufficient as a laborer's lien, that he then have an equitable lien against the defendant's property to secure the payment of the $9,000, before set out in his petition. It was further alleged in substance that one R. A. King was a holder of a vendor's lien note covering the property of the defendant, which was thereunder sold at a judicial sale and purchased in the name of C. M. Van Benschoeten, who had been furnished by the other stockholders in Michigan with the money to pay off said note, and that by Van Benschoeten's conduct he was "estopped from denying that said title and property was the property of the said Flint-Texas Oil-Drilling Trust, and furthermore settled with said trust a controversy relating thereto with certain stockholders in Michigan, by paying them off for their interest in the lease, but that no settlement had been made with the plaintiff. It was further alleged the plaintiff was a partner, and was being excluded from the partnership in the management of the properties, etc., and he prayed for a recovery of the $9,-000 before mentioned, with foreclosure of liens theretofore mentioned, and that "a master be appointed to determine the various unliquidated and liquidated claims and counter claims and pass upon said items of account; that this plaintiff be vested with an assigned one-tenth interest in the above oil and gas lease"; and for general relief.

The defendant answered, so far as disclosed by the record, with a general denial and with a special plea, not thought to be necessary to set forth.

The case was tried before the court without a jury, and resulted in a judgment in the plaintiff's favor for the sum of $3,654.06, against the Flint-Texas Oil-Drilling Trust, C. M. Van Benschoeten, and other named trustees, with findings to the effect, among other things, that Lee Bridges was a partner in the enterprise and remained in charge of the property until about the 20th day of November, 1926, when he was discharged by Van Benschoeten without just cause and ordered to vacate the premises, and that at the time of said discharge there was justly due the plaintiff the sum of $3,654.06, "for materials, supplies, labor, repairs, improvement, and upkeep in and about said property and his personal service in the operation, care, protec-

tion, etc., incident thereto"; that the plaintiff at all times was a partner in the enterprise, and entitled to an "equitable lien" upon all the property of the Flint-Texas Oil-Drilling Trust, for the purpose of securing the payment of the said sum of $3,654.06, together with his interest and cost.

The court further found that on or about the 30th day of June, 1924, there was due and unpaid to the plaintiff from the defendant trust the sum of $3,000 and more for past salary for services rendered up to that date, and that it was "then agreed by and between the parties, plaintiff, Lee Bridges, and the defendants Flint-Texas Oil-Drilling Trust, C. M. Van Benschoeten, and other authorized members of said trust, by and through the said, defendant C. M. Van Benschoeten, acting as its duly authorized trustee and agent of said trust," that said trust would convey to Bridges an equal one-tenth interest in and to all of the property of said trust, in consideration of the said Lee Bridges releasing his said claim of $3,000 against the said trust in exchange thereof; that same was accepted and agreed upon, and it was accordingly ordered that plaintiff be vested with an undivided one-tenth interest in all property of the trust.

The court's judgment further recites that on the 21st day of May, 1927, through ancillary proceedings, Charles E. Clark had been duly appointed as receiver to take charge of, manage, control, keep, operate, and dispose of all the property of the Flint-Texas Oil-Drilling Trust, subject to the further orders of the court; that the receiver accepted, qualified, gave bond, and entered upon his duties, and was still so acting, and which receivership was ordered to be continued until the further orders of the court. The court further found, as recited in the judgment, that D. G. Eads, an expert accountant, had been appointed to audit the books and accounts of said parties; that the audit had been completed, and as corrected and amended "comprised a full account of the same."

The court further found that there was dissension among the shareholders, all of whom, save the plaintiff, resided in Flint, Mich., and that there was no property out of which to pay plaintiff's debt, except the lease in question and the other property used in its development, which was ordered to be sold and the "Flint-Texas Oil-Drilling Trust" dissolved, etc.

From the judgment so rendered, the defendants have appealed. The record and briefs in this case are voluminous and more or less confusing, covering as they do numerous transactions between the appellant trustees, the plaintiff, and others, from June 12, 1922, to the filing of this suit on January 7, 1928. We think, however, that the facts material to our conclusion may be stated in substance as follows:

Sometime prior to the 12th day of June, 1922, the plaintiff, Lee Bridges, together with another, visited Flint, Mich., and persons there residing, including C. M. Van Benschoeten, became interested and entered into an association with an authorized capital of $100,000, represented by shares of stock of the par value of $1 each, and purchased the oil lease situated in Wichita county involved in this litigation. The plaintiff, Lee Bridges, was employed to manage and develop the lease. There were some five wells on the lands comprised in the lease, yielding some five to eight barrels each, and two wells were later drilled. Bridges' compensation was by agreement fixed, as he states in his petition, to wit, at the prevailing wage for similar work in that territory and 25 per cent. of the net profits. On May 11, 1923, the plaintiff received 500 shares of stock in the association, of the par value of $1 per share, as a bonus. No net profits seem to have been realized, and the plaintiff's wages had accumulated and amounted to about $3,000 on June 30, 1924. On that date C. M. Van Benschoeten, the managing trustee of the association, by letter, notified Bridges that the company was unable to take care of his salary, and proposed to assign him an undivided one-tenth interest in the lease, together with a monthly payment that would allow him to take care of his expenses confortably outside of whatever income would be received by Bridges through his one-tenth interest, "in lieu of past services and former contract." This proposition was accepted, and under the new contract thus entered into Bridges served until October 1, 1926, when he was discharged, as he alleges in his petition, and another employed to superintend and manage the enterprise.

■ Prior to June 30, 1924, the lease was sold under foreclosure process, and bought in by C. M. Van Benschoeten, with moneys furnished by some 20 of the original stockholders. We overrule the contention, presented in numerous propositions, that the sale had the effect of terminating the Flint Association, and hence that it was dissolved and a new body formed by the purchase of C. M. Van Benschoeten at the vendor's lien sale.

■ A stock company of the kind under consideration is neither a partnership, as defined in commercial law, nor yet a limited partnership under the terms of our statutes. The status of the association stated is statutory rather than contractual, and the death or withdrawal of one or more members does not effect a dissolution. The stock can be bought and sold without affecting the integrity of the concern. See Industrial Lumber Co. v. Texas Pine Land Co., 31 Tex. Civ. App. 375, 72 S. W. 875. The statement of C. M.

Van Benschoeten that the old organization was no more was purely hearsay, and cannot be given the effect contended for. Moreover, there is evidence introduced tending to show that after the sale, or perhaps before, Van Benschoeten and the others who contributed the money necessary to pay off the vendor's lien, purchased the stock of the noncontributing members of the association. So that we think the association as an entity, having the capacity of suing and being sued, continued, even if there was no purchase of stock from the noncontributing members, those who furnished the means to pay the debts and satisfy the vendor's lien would have the right of contribution against the noncontributing members in analogy to the rule in the case of joint tenants. Again, it is held in Phœnix Oil Co. v. McLarren (Tex. Civ. App.) 244 S. W. 830, that a shareholder in a joint-stock association cannot have its affairs wound up and its assets distributed during the period for which, by the declaration of trust, management of its affairs was put in the hands of trustees, at least in the absence of a very clear showing of necessity.

We accordingly think that the court, in view of article 6134, Rev. Statutes, did not err in refusing to abate the suit for want of proper parties, but did err in entering his decree that the association was dissolved. This is particularly true, in view of the fact that a receiver was appointed and the receivership is yet pending. When the receivership is closed, and all assets of the company shall have been absorbed in payment of its debts, costs of receivership, etc., will be time enough to dissolve the association.

■ The court found, as appears from the recitations in its judgment, that the appellee was entitled to recover the sum of $3,654.06 "for money advanced and paid out by the said Lee Bridges for materials, supplies, labor, repairs, improvement, and upkeep in and about said property, and his personal services in the operation, care, protection, etc., incident thereto."

The appellant requested the court in writing to find additional facts to those set forth in the judgment, so as to show what part of the $3,654.06 was awarded Bridges for salary, and what part for expenses, so that a direct attack could be made on each. The court overruled this request, and in doing so we think committed error. The record is quite intricate and involved, the statement of facts covering, as it does, operations, payments, offsets, services performed, etc., relating to the management of the lease covering the period from 1922 to the filing of the suit in 1928. Many of the facts relied upon by appellee are shown by declarations which constitute clear hearsay. But, so far as we have been able to analyze the testimony and records, an auditor was appointed by agreement of the parties to adjust the accounts between them. The final statement of the amounts credited to appellee for moneys paid out for supplies, labor, etc., is $1,253.74; the aggregate of the sums of money received by him from the association, amounting to $16.55, is apparently the amount to which appellee is entitled for moneys paid by him chargeable to the association. Apparently, therefore, the difference between $16.55 and $3,654.06, to wit, $3,637.51, is claimed and allowed appellee as wages.

Appellee was first placed in charge of the lease and went to work on the 12th day of June, 1922; his compensation "being then fixed at a prevailing wage and 25 per cent. of the net profits." The relation so fixed continued until June 30, 1924, at which time he was claiming an indebtedness against the association for $3,000. He was notified by Van Benschoeten, the managing trustee of the association, that the company was unable to take care of his salary and proposed to assign an "undivided one-tenth interest in the lease, together with the monthly payment they would allow you to take care of your expenses comfortably, outside of whatever income would come to you through your one-tenth interest in lieu of past services and former contract." Appellee testified that, in answer to the letter containing the proposition, he "accepted the proposition."

Prior to this date, appellee had been given as a bonus 500 shares of the capital stock of $100,000, par value of $1 per share, which the association was authorized to issue, and we fail to find in the agreement made by appellee's acceptance of appellant's proposition any warrant for the charge of $200 a month as wages for appellee. The contract as therein made certainly contemplated a discharge of the claims for wages that accrued prior thereto, and that appellee's compensation for his future supervision, attention to, and labor involved in superintending the operation of the lease should be his share of the profits, plus an amount sufficient for a comfortable living. The petition nowhere alleges or seeks to recover any sum expended for his comfortable living, and the only evidence we find in the statement of facts relating to that subject is an incidental statement of appellee, while testifying, that from June, 1923, to June, 1924, and about two months in 1924, 14 months in all, he paid to a party named $35 a month for his board, the association at the same time having furnished him with a house in which to live and an automobile, which seems not to have been taken into account in the settlements made by the court. The only reference to an agreement to pay wages that we find is in a letter written by Van Benschoeten, dated January 23, 1923, in which appellee was requested to remain in charge of the wells and property "on normal wage."

We should probably add in this connection that appellee testified that he remained upon the lease after his discharge until the time of the institution of the suit and at the request of one of the trustees. But he does not name the trustee so requesting, nor show that said trustee had any authority whatsoever to so direct, and we fail to find any warrant in the evidence which will justify a charge against the association for wages after the time of his discharge, which was, as is undisputed, by the managing trustee.

No objection has been urged to the judgment in favor of K. R. Tabor, on his cross-action, against the appellee, and to that extent, at least, the judgment wil be affirmed. Nor do we think the court erred in his finding that Van Benschoeten, in his purchase of the properties in June, 1924, was a trustee for at least the other contributing shareholders, and that the title taken in his name inured to their benefit. Nor do we find error in the court's order continuing the receivership, it not appearing that objection was made thereto at the time of the appointment, nor appeal taken from the order, nor is any fact shown in the record amounting to any invalidity of the appointment.

Nothing else occurs to us which requires discussion, and we have concluded that the judgment, in so far as in favor of Tabor, and in so far as the judgment vests in appellee an undivided one-tenth interest in the leases in controversy, should be affirmed; but that in other respects the judgment below should be reversed for a new trial, not in conflict with this opinion, for the error of the court in overruling appellant's request for additional findings.