JOSIAH W. FORT AND WIFE v. ELIAS D. BARNETT.

A creditor sent a proposition to his debtor, offering to accept a specified sum for his unliquidated demand, provided the debtor would compromise a pending suit with certain other parties, (on terms that were named,) which was accepted; *Held*, that both parties were equally bound, the one to give, and the other to receive that particular amount, upon the condition named, without the necessity of any notice of acceptance being sent to the creditor.

A charge that, under the facts adduced in evidence, does not correctly construe a contract involved in the issue, is not to be deemed erroneous, if it express the same idea as that conveyed by the plea, which sets it up as a defence.

ERROR from Red River. Tried below before the Hon. William S. Todd.

This was a suit brought on the 7th of April, 1853, by the defendant in error, against William T. Montgomery, for one-sixth of the profits, for one year, of a certain steam mill, which were alleged to have been worth $2,000. The action was based upon the following written agreement between the parties, dated the 11th day of January, 1848:—

"The conditions of this agreement are, that the said Barnett shall loan to the said Montgomery, the sum of five hundred dollars, at the rate of ten per cent. interest, until the first day of June, 1849; and the said Barnett further agrees to act as agent, in purchasing machinery for a steam saw and corn mill, contemplated being erected at Bastrop, on the Colorado river, by E. M. Smith, S. W. Sims, and W. T. Montgomery, and to superintend the putting up of said machinery, and running the same, until the first day of January, 1849; and it is further agreed, that the said Barnett shall receive for his services, one-sixth of the profits arising from the business of said mills, (after the expenses of running said mill, shall have been paid out of the funds of the concern,) for the space of one year after it goes into operation."

The defendant, Montgomery, pleaded in avoidance, that Smith

and Sims disputed his right as partner, and that he had brought suit against them, in the District Court of Bastrop county, to establish it; that Barnett agreed to wait its determination, and that during its pendency, the plaintiff advised him to compromise the suit with Smith & Sims, for $4000, stating at the same time, that if he, (the defendant,) would so compromise his interest in the said mill, that he, (the plaintiff,) would take $500 as the amount due him. And, that he, (the defendant,) acting under the advice of the plaintiff, and with the understanding that the plaintiff would receive the $500, in full satisfaction of whatever amount might be due him on account of his services, at the said mill, did compromise the said suit for the sum of $4000, and relinquished all his interest in the said mills, to Smith & Sims. The defendant alleged, that by reason of the plaintiff's proposition to receive $500, in full payment of his claim, he, (the defendant,) was induced to agree to the compromise; and that the said amount of $500 had long since been paid to the plaintiff; and had been paid for all he did for the defendant, in and about the mill, in the manner and amounts he proposed to receive.

The defendant also pleaded in set-off, an account of $414, paid by him for the plaintiff, in 1849 or 1850, on a previous partnership; which was admitted by the plaintiff, on the trial. It was proved, that Sims had paid to the plaintiff, in the year 1849, $400, for the defendant, on the contract sued on. All other payments were shown to relate to other transactions, and not to the contract sued on, for the one-sixth of the profits of the mill, for one year. The profits of the mill were proved to be about $1600.

The facts in relation to the proposal of the plaintiff to the defendants, as proved by Epperson, are stated in the opinion.

During the progress of this suit in the District Court, the defendant died, and Nancy J. Montgomery, his executrix, made herself party defendant, and afterwards, having married Josiah W. Fort, he was joined in the suit with the said Nancy J., as defendant. Verdict and judgment for the plaintiff for $600.

*Murray & Dickson*, for the plaintiff in error.

*S. H. Morgan*, for the defendant in error.

ROBERTS, J.—The verdict in favor of Barnett, for $600, was not found upon the establishment of the validity of his agreement, to take $500 or $600, if Montgomery would enter into a compromise of his suit, with Smith & Sims, for $4000; because, had it been predicated upon that, the admitted account, pleaded in set-off, of $414, must have reduced the amount of the finding to less than $200. No part of the evidence accounted for the liquidation of this $414, so as to leave the $500 or $600 still due from Montgomery, to Barnett. If the jury then, should have found, from the facts proved, that the contract sued on was altered and modified by Barnett's agreement, in 1851, to take $500, or $600, upon the condition that the said compromise was made, the verdict is excessive and the judgment is erroneous.

In addition to the account of $414, pleaded in set-off, being admitted, it was proved on the trial, "by B. H. Epperson, that he went to Bastrop, in August, 1851, to compromise a suit that Montgomery had with Smith & Sims, in relation to Montgomery's interest in the mills referred to in plaintiff's petition; and that Montgomery instructed Epperson, to confer with Barnett, who was acting as his friend and agent, and that he must not make any compromise with Smith & Sims, unless Barnett assented to it; and, that upon a conference with Barnett, he, Barnett, advised the compromise, and stated, that if Montgomery would compromise the suit with Smith & Sims, at $4000, he, Barnett, would take $500 or $600 from Montgomery, in liquidation of his claim against Montgomery; that he, Epperson, soon after returned to Red River county, and stated to Montgomery, Barnett's proposition, to which Montgomery assented, but does not know that Barnett ever had any notice of Montgomery's assent to the proposition; and that Montgomery did compromise said

suit of Smith & Sims, in September, 1851, at four thousand and odd dollars."

The reason why the jury did not adopt this proposition of Barnett, as the basis of their verdict, is to be found in the charge of the court to the jury.

The court charged, that "if the jury believed from the testimony, that subsequent to the making the contract sued upon, E. D. Barnett proposed to change that contract, so as to take a specific sum for his claim, in consideration that Montgomery would compromise his suit with Smith & Sims, that Montgomery accepted of that proposition, and that Barnett had notice of that acceptance on the part of Montgomery, then you must take the amount, either $500 or $600, which Barnett proposed to take, as the basis of his claim then subsisting against Montgomery, without regard to any money previously paid. If the evidence does not prove this, the jury will base the demand of plaintiff upon the contract, and allow him his part of the profits of the mill, as specified therein, after crediting Montgomery with all the payments shown to have been made."

This charge makes it · essential to the validity of Barnett's agreement, (to take $500 or $600, in liquidation of his claim,) that Barnett should have had notice of Montgomery's acceptance of his proposition, made to the agent, Epperson.

It is based upon the idea that, without such notice, there would not be that mutuality of assent, necessary to complete a binding contract. (2 Kent, Com. 477.) From the nature of the contract involved in Barnett's proposition, we do not think such notice was necessary. The proposition did not contain anything further to be done between Barnett and Montgomery, but between Montgomery and third persons, (Smith & Sims.) Montgomery might, or might not, be able to do the thing required, which was, to make the compromise. As soon, however, as he assented to the proposition made by Barnett, through Epperson, he became bound for the $500 or $600, upon the condition that he made the compromise. (Chitty on Contracts, 8th Am. ed. 13, 14.) And from that time forward, their minds having then met and

concurred on the same terms, they were both equally bound, the one to give, and the other to receive, a particular amount, upon that condition. (Chitty on Cont. 5.) The thing to be done, which was the consideration of the contract, was, the making of the compromise. Up to the time of the performance of that act, the contract was incomplete, for want of a consideration; and although Barnett may have had the right, in the meantime, and before its performance, to have withdrawn his consent; still not having done so, and his proposition having been accepted and acted on, by performing the condition embraced in its terms, which had relation to acts with other persons, and not Barnett, there was not only a valuable consideration for the contract, but it had been completed, by a full compliance with its terms. (Id. 8; 4 Taunt. 611; Chitty on Contracts, 8th Am. ed. 15; 5 M. & W. 498–501; 3 Johns. Cas. 81; 2 Id. 253.) The charge, therefore, in this respect, was erroneous.

It is also contended, that the charge is erroneous, in requiring the payments previously made on the contract sued on, to be disregarded, and thereby taking from the jury the right to determine what was the meaning of the contract, as contained in Barnett's proposition. This objection might be a good one, if the plea was not capable of bearing that construction. If that is not what is meant by the allegations of the plea, it should be more carefully written, so as to represent the fact otherwise. Such a charge would not be correct, if made entirely with reference to the evidence adduced. But as it expresses the same idea, which the plea conveys, when taken most strongly against the pleader, we cannot say it is error. Judgment is reversed and the cause remanded.

Reversed and remanded.