FEINBERG et al. v. FRANK. (No. 1685.)

(Court of Civil Appeals of Texas. El Paso. Dec. 18, 1924. Rehearing Denied Jan. 29, 1925.)

1. Master and servant ⬯80(10) — Evidence held to establish express contract at salary and share of profits.

Evidence *held* sufficient to establish express contract of employment at $200 per month and 20 per cent. of net profits of firm.

2. Contracts ⬯353(2)—Instruction held not submission of case on implied contract.

Instruction that acceptance of offer may be inferred from words spoken or acts performed or both taken together is proper, though express contract only is pleaded and such instruction is not submission of case upon implied contract.

3. Master and servant ⬯6—Acceptance proven by acts and words taken together.

Employee's acts in entering upon performance of his duties may be shown in connection with his words of acceptance in proving parol contract of employment.

4. Master and servant ⬯80(10)—Verdict on express contract not defeated by admission of employee that compensation unsettled.

Verdict for employee on express contract of employment *held* not contrary to evidence because of his admission that contract was never definitely settled; only uncertainty being whether he was to receive 20 or 25 per cent. of net profits in addition to salary.

5. Master and servant ⬯80(5)—No variance in action for compensation.

In employee's action on alleged agreement for a salary and 20 per cent. of profits of business, there was no variance, where evidence showed definite agreement for 20 per cent. of profits, though it also showed that no definite agreement was reached as to whether he should have an additional 5 per cent.

6. Trial ⬯215—Instruction held properly refused as not supported by evidence.

Refusal to instruct that, if jury found that by agreement employee was to receive between 20 and 25 per cent. of net profits, they could not find in affirmative on special issue of whether employee was to receive 20 per cent. *held* not error, because evidence did not suggest such finding.

7. Trial ⬯362—Proper to modify judgment to eliminate part not embraced by pleadings or contract sued on.

Where judgment for per cent. of profits of partnership under express contract of employment included per cent. of profits of partnership in another business embraced neither by contract nor by pleadings, but erroneously submitted with special issues, court properly modified judgment to eliminate such profits.

8. Appeal and error ⬯1153—Modification of judgment if erroneous, held not to require reversal, as appellate court could render proper judgment.

Action of trial court in modifying judgment by eliminating part rendered on issue erroneously submitted, if beyond court's powers, *held* not ground for reversal, as under Rev. St. art. 1626, appellate court could render such judgment as should have been rendered.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by C. J. Frank against Max Feinberg and another. From a judgment for plaintiff, defendants appeal, and plaintiff files cross-assignment of error. Cross-assignment overruled and judgment affirmed.

See, also, 256 S. W. 944.

Croom, Goldstein & Croom, of El Paso, and John M. Conley, of Beaumont, for appellants.

John T. Hill, of El Paso, for appellee.

WALTHALL, J. C. J. Frank brought this suit against Max Feinberg and Isadore Feinberg, alleging them to be a partnership and doing business as such under the firm name of El Paso Iron & Metal Company, and alleging that on the 1st day of August, 1920, they employed him at a salary of $200 per month, "and as an additional consideration promised and agreed to pay him 20 per cent. of the net profits of the business" during the time of his employment, which he alleges continued to the 22d of March, 1922, and alleged that his share of the net profits of the business was $4,200. His suit was to recover the net profits of the business and for the amount above stated, and interest and costs of suit.

The case was tried with a jury and submitted upon special issues. The evidence discloses that appellee, Frank, had been in the employ of appellants for some three years prior to the 1st of August, 1920, and had quit their service and was on the eve of going elsewhere. At the time he quit the service of appellants appellee was receiving a monthly salary of $200. The salient features of appellee's evidence giving rise to the questions presented here are substantially as fol-

lows: He testified that in a conversation with Isadore Feinberg, one of the appellants, the following occurred: Isadore Feinberg said to him:

" 'Stay here, I want you to stay; if you stay we both make money.' I says: 'What do you mean by that?' He says: 'We will both make money.' I says: 'That is kind of indefinite; I don't understand that.' He says: 'If you stay here I give you 20 per cent. of the net profits in addition to $200 a month you are now drawing.' I says: 'That sounds pretty good, sounds reasonable.' I says: 'If you think I am worth 20 per cent. I think I am worth 25.' He says: 'I don't know,' he says, 'Let it go at 20 per cent. and Max usually comes along about the first of the year, and he can settle the difference between 20 and 25.' "

On cross-examination he added:

"And I said all right. I called his attention to the fact that when Max was here I told him I was going to leave, and before saying very much one way or another I wanted to see if it was agreeable to Mr. Max Feinberg to have me stay. If it was not agreeable to Mr. Max Feinberg I would not stay under any condition. I wrote Mr. Max Feinberg a letter, and he answered me."

The letter and the reply were offered in evidence. The letter is lengthy, and we need not quote it. It did not state the above conversation with Isadore Feinberg, but referred more to appellee's dissatisfaction to remain while one Ehrenberg was connected with the business, and was better satisfied to remain since Ehrenberg had left. The letter contained the following statement:

"There is no time set for my staying, and if you care to have me stay indefinitely, and your proposition comes anywhere near what I have offered, will be pleased to consider anything you have to offer. If you do not, there is no harm done, and will remain until some of these old things are cleared or until such time as you see fit to relieve me."

The letter was addressed to Max Feinberg at Beaumont, Tex., where he lived. Max Feinberg's reply referred to Ehrenberg, and the only feature of it that seems relevant to any issue here. is the following:

"Regarding to your remaining with the El Paso Iron & Metal Company, I appreciate your staying, and I want you to stay on indefinitely. It is useless for me to submit any proposition to a man like you because you are business man enough to know that a man's salary is depending upon the amount of business and profits that are made, and I assure you that it will be taken care of accordingly."

Appellee testified that after receiving the above letter he wrote him that it was agreeable to Isadore for him to remain with the company. He remained with the appellants until the latter part of March, 1922. He was paid $200 each month. He testified that during that time he "mentioned to Issy (Isadore) about my 20 per cent. profits, * * *

and he told me to wait until Max came along. * * * That was about that additional 5 per cent., if it was agreeable to Max it was agreeable to him. * * * That contract never was changed. I worked under the 20 per cent. proposition until I quit. * * * I am suing on this definite contract for 20 per cent., which I made in July with Issy (Isadore) Feinberg. That is what I am basing my cause of action on."

In answer to several questions appellee stated that the exact per cent. of the profits he was to receive was never definitely settled; that the exact amount was to be agreed upon when Max Feinberg came to El Paso. The net profits of the El Paso Iron & Metal Company were found to be $8,000 during the time appellee was employed. under the alleged agreement to pay 20 per cent. of the net profits additional to the $200 per month.

The evidence disclosed that appellants owned a half interest in another partnership business operating under the name of the Government Truck Sales Company. That company was organized, apparently, subsequent to the time of employment of appellee by the El Paso Iron & Metal Company. The net profits of the Government Truck Sales Company received by appellants were found to be $13,000, and appellee also claimed in his evidence 20 per cent. of the net profits of that company.

The trial court, in the original judgment rendered, awarded appellee 20 per cent. of the net profits received by appellants in each of said companies, but later amended the judgment by awarding appellee only the $1,600, the 20 per cent. on the net profits of the El Paso Iron & Metal Company. Appellants filed original and amended motions for new trial, each of which was overruled, to which rulings appellants excepted and gave notice of and have perfected their appeal.

Appellee excepted to the action of the court in confining the recovery by the amended judgment to the net profits of appellants in the El Paso Iron & Metal Company and refusing recovery on the net profits received by appellants in the Government Truck Sales Company, and upon the action of the court in not conforming the judgment to the verdict of the jury as above indicated bases his cross-assignment of error.

### Opinion.

Appellee sued upon an express contract alleging that appellants agreed to give him, additional to the $200 per month, 20 per cent. of the net profits of the El Paso Iron & Metal Company.

Appellants challenge the sufficiency of the evidence as showing that an express contract was never entered into between the parties by the terms of which appellants were to pay to appellee 20 per cent. of the net profits of their partnership business. We have quoted, and where not quoted have

SOUTHWESTERN REPORTER (Tex.

stated, the salient portions of appellee's evidence in stating what he claims shows an express contract for the 20 per cent. of the net profits of appellants in the partnership stated.

[1] We have concluded that the evidence is sufficient to show an express contract for $200 per month and 20 per cent. of the net profits of the El Paso Iron & Metal Company. It is clear that appellee was not willing to work for $200 per month and had quit the service of appellants. One of the appellants then proposed to appellee to pay him the $200 per month formerly paid, and in addition thereto 20 per cent. of the net profits of the business of the partnership. Appellee did not accept the proposition in full, but made a counter proposition for 25 per cent. of the net profits instead of 20 per cent., as proposed by appellants. According to the evidence of appellee as above quoted the reference to the other partner was to the difference only between the two offers of 20 per cent. and 25 per cent. The evidence is:

"Isadore said, 'I don't know, let it go at 20 per cent., and Max usually comes along about the first of the year, and he can settle the difference between 20 and 25.'"

On cross-examination, after repeating the above statement, the witness added: "And I said all right." Appellee testified that the net profits were divided at the end of the calendar year; that he spoke to Isadore about the additional 5 per cent. and he said, "Wait until Max comes."

The evidence thus shows a definite proposition expressed in words, and an acceptance likewise expressed in words of employment at $200 per month and 20 per cent. of the net profits of the business.

[2, 3] In connection with the submission of the issue of the acceptance of the proposition to pay $200 per month and 20 per cent. of the net profits, the court instructed the jury as follows:

"The acceptance of an offer may be inferred from words spoken or acts performed or from both words and acts taken in connection with each other."

Appellants insist that the instruction was a submission of the case upon an implied contract when an express contract only had been pleaded. We do not concur in this contention. It is true and well settled that recovery cannot be had upon an implied contract where the suit is based upon an express contract. But the question here presented is: May not an acceptance of the terms of a parol contract be shown by the performance of the contract in connection with words of acceptance? The question of assent to the terms of the proposed employment was one of fact for the jury. Immediately upon entering into the contract for employment appellee entered upon his duties. His acts in entering upon the performance of his duties, we think, could be shown in connection with his words of acceptance, and as further evidencing his acceptance of the proposition for employment. The evidence of his acts in the performance of his service would not necessarily be upon an implied contract, nor would the charge of the court as above be a submission of an implied contract.

In Patrick v. Smith, 90 Tex. 267, 38 S. W. 17, a suit upon an express contract, Chief Judge Gaines, speaking for the Supreme Court, said:

"That an assent to a proposed contract may be evidenced by the acts of the parties we have no doubt."

And again, in the same opinion:

"We merely hold, here, that there was evidence from which the deduction might legitimately be drawn that the parties agreed upon the proposals as modified by the last proposition of the defendant."

See, also, Fort v. Barnett, 23 Tex. 460; Northrup v. Colter, 150 Mo. App. 639, 131 S. W. 364. We need not review the cases referred to by appellants. As we view them they are cases defining contracts, express and implied, and others holding that a suit upon an express contract will not support recovery upon an implied contract, and vice versa. But we have found no case holding that in a suit upon an express contract assent or acceptance to the proposed terms of a contract, whether express or implied, may not be evidenced by the acts of the parties in giving assent to its terms.

[4] In view of appellee's admission that the contract of employment "was never definitely settled," appellants make the contention that the verdict and judgment are contrary to the manifest weight of the evidence. Appellee's evidence, however, makes it clear that the only uncertain feature of the contract was as to a part of the per cent. of the profits he was to receive. He testified that he and Isadore Feinberg definitely agreed on 20 per cent. of the net profits and agreed to refer his proposition of 25 per cent. of the net profits to Max Feinberg when he should come to El Paso, but that Max did not come so that the difference was never definitely settled.

[5, 6] We think there was no variance between his allegation and evidence, nor was the court in error, under the evidence, in refusing to give appellant's special charges in effect directing the jury that, unless the agreement between the parties definitely settled the amount appellee was to receive for his services, or if appellee under the agreement should receive between 20 and 25 per cent. of the net profits for his services, their answer must be in the negative, on the issue submitted as to whether appellee was

to receive $200 and 20 per cent. of the net profits for his services.

The evidence of appellee being specific and definite that he was to receive $200 and 20 per cent. of the net profits for his services, and was contradicted only to the effect that no agreement was ever suggested or made by which appellee was to receive any part of the profits for his services, it was not error to refuse a special charge to find whether the agreement, if any there was, provided that appellee should receive between 20 and 25 per cent. of the net profits of the business. There was no evidence suggesting such finding.

[7] The trial court was not in error, as insisted by appellee in his cross-assignment, in modifying the original judgment so as to eliminate therefrom the 20 per cent. on the net profits of the Government Truck Sales Company. In the first place there was no pleading on the part of appellee to form the basis of such an issue. His contract and his suit based thereon contemplated recovery only on the net profits of the El Paso Iron & Metal Company. The contract did not embrace profits of appellants in any other business or enterprise in which appellants might then or thereafter be engaged, nor did appellee so allege. The petition stated the profits of appellants in the El Paso Iron & Metal Company to which he was entitled at $4,200, but that statement in no wise embraced the profits of any other business of appellants than the partnership contemplated by the contract.

[8] The trial court in reforming the judgment eliminated the immaterial issue erroneously submitted to the jury. But, if we should be in error in holding that the trial court, having erroneously submitted the issue to the jury, could not correct the error without granting a new trial, we still think, under article 1626, R. S., a reversal of the case would not be necessary, and that this court can properly render such judgment as the trial court should have rendered under the issues tendered by the pleading, and as the trial court did render. The case as presented here does not come under the exception stated in article 1626, requiring a reversal. We think the above holding in the matter of the judgment to be here rendered is made clear by Presiding Judge Sonfield in Houston Belt & Terminal Ry. Co. v. Lynch et al. (Tex. Com. App.) 221 S. W. 959.

Finding no reversible error, the case is affirmed.

HIGGINS, J. (concurring). In rendering judgment upon special findings it is the duty of the court to conform the same to the findings upon the material issues in the case. Findings upon immaterial issues may be disregarded. There is no warrant for the submission of an issue not raised by the pleadings. A finding upon an issue which is not raised by the pleadings is immaterial, and should be disregarded in the rendition of the judgment. Krenz v. Strohmeir (Tex. Civ. App.) 177 S. W. 178 at page 181; National, etc., v. Reveire (Tex. Civ. App.) 209 S. W. 799; Kelley v. Ward, 94 Tex. 289.

As was said in Krenz v. Strohmeir:

"Where a general charge is given it is error to submit an issue not raised by the pleadings, upon which the jury might have based their verdict, for the reason that it cannot be known that they did not do so. But where a case is submitted on special issues, it does not matter that an issue is submitted which is not raised by the pleadings, as the court will base its judgment on the findings of the jury on the material issues. The court might have submitted to the jury the issue as to whether or not George Washington cut the cherry tree, and they might have found that he did not, but this would not have been a ground for setting aside the judgment if it followed the verdict as to the material issues raised by the pleadings."

The pleadings in this case presented no issue with respect to any right of recovery by Frank of any part of the profits of the Government Truck Sales Company. They were insufficient to support a recovery of any of the profits of that company.

The findings of the jury with respect to the profits of the Government Truck Sales Company were therefore immaterial, and the court properly disregarded the same in the amended judgment. Its action in so doing is not in conflict with the rule that the trial court cannot render a judgment contrary to the verdict.

For the reason indicated, the writer concurs in overruling the cross-assignments of Frank.