FARMERS' STATE BANK & TRUST CO.
et al. v. GORMAN HOME REFINERY
et al.    (No. 1721.)

(Court of Civil Appeals of Texas. El Paso.
April 16, 1925. Rehearing Denied May 21,
1925.)

1. Contracts ⬗4—"Express contracts," "implied contracts in fact," and implied "contracts in law," distinguished.

In express contracts, mutual assent of parties and terms are expressed orally or in writing, while in contracts implied in fact, which differ from those implied in law in that element of actual assent is present, such assent and terms of contract are inferred as fact from surrounding circumstances; only substantial distinction being in mode of proof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Express Contract; Implied Contract.]

2. Joint-stock companies and business trusts ⬗15(1)—Stockholders not personally liable on notes, for payment of which creditor agreed to look only to company's assets.

Contracts implied in fact are as binding as express contract, except in cases requiring written contract, and, where creditors of business trust agree to look only to its assets for payment, stockholders are not personally liable on notes not signed by them, even if liable otherwise as partners, and those signing notes are not liable on drafts and trade acceptances of company or for money advanced to it.

3. Trial ⬗350(4)—Finding that payee of notes knew of provisions in declaration of trust, forbidding maker's officers from binding stockholders personally, held material on issue of implied contract to look only to company's assets for payment of debt.

Finding that bank taking notes sued on knew of provisions in declaration of trust forbidding officers and agents from binding its stockholders personally, held material on issue vel non of contract implied in fact to look only to company's assets for payment of debt.

On Rehearing.

4. Trial ⬗253(5)—Issue of implied agreement to look only to assets of company for payment of debt held not eliminated by instruction.

In action on notes of business trust, instruction that "mere knowledge is not sufficient to amount to an agreement, but that there must be the mutual intention of the parties expressed at the time," that plaintiff would look only to company's assets for payment of debt, held not to have eliminated issue of implied agreement to do so.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by the Farmers' State Bank & Trust Company and another against the Gorman Home Refinery and others. From the judgement denying recovery against certain defendants, plaintiffs appeal. Affirmed.

Witt, Terrell & Witt and Sam R. Scott, all of Waco, for appellants.

J. R. Stubblefield, Chas. C. Robey, Burkett, Orr & McCarty, Dabney & Callaway, Scott W. Key, and Turner, Seaberry & Springer, all of Eastland, J. L. Alford, of Rising Star, J. Frank Sparks, of Gorman, S. R. Carruth, of Meridian, R. F. Higgins, of Marlin, and Callaway, Dalton & Callaway, of Dallas, for appellees.

HIGGINS, J. This action was originally brought by the Farmers' State Bank & Trust Company against the Gorman Home Refinery, hereinafter designated as the refinery. The third amended original petition upon which the case was tried names said bank and J. L. Chapman, commissioner of insurance and banking, "in charge of the affairs of said bank in course of liquidation," as plaintiffs, the Gorman Home Refinery and numerous individuals, as defendants.

Briefly stated, the amended petition avers the following facts:

The refinery is a joint-stock company or association, J. M. Thomas and Jay F. Smith being its trustees; the other defendants are shareholders in the refinery. On March 17, 1920, J. M. Thomas and W. A. Hickey, then trustees of the refinery, created a debt to the plaintiff bank in the sum of $65,000, to be used in the conduct of the business of the refinery, and to evidence such indebtedness the refinery, acting by its said trustees and agents, executed to the bank three notes aggregating said amount. At the time it was contemplated that the refinery would become further indebted to the bank. To secure the payment of the notes and future indebtedness, the refinery executed a deed of trust upon its property. The three notes have not been paid and the indebtedness which they evidence is now represented by certain renewal notes executed for the use and benefit of the refinery by its trustees as follows:

A demand note in the sum of $6,000 to the order of the makers, dated July 12, 1920, signed by the refinery by J. M. Thomas and F. S. Perry, trustees, and by the makers indorsed in blank.

Four notes in the sum of $5,000 each, to the order of the makers, dated September 30, 1920, due December 31, 1920, signed by J. M. Thomas, F. S. Perry, J. T. Neill, and R. T. Haile, and by the makers indorsed in blank. As to these four notes it was alleged that, while neither of them "were signed by Gorman Home Refinery nor by the trustees thereof as such, the money so obtained upon said note from this plaintiff was for the use and benefit of the said Gorman Home Refinery, and was delivered to it through its trustees."

---

⬗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Two notes in the sum of $5,000 each to the order of the makers, dated October 13, 1920, due in 90 days, signed by the Gorman Home Refinery, J. M. Thomas, trustee, F. S. Perry, trustee, and by them indorsed in blank, and also indorsed by said Thomas, Perry, and J. T. Neill individually. As to these two notes it was alleged:

"That the execution and indorsement of said notes, at the time and in the manner stated, was authorized by the defendant Gorman Home Refinery."

One note in the sum of $5,000 to the order of the makers, dated November 10, 1920, due in 90 days, signed by J. M. Thomas, F. S. Perry, and J. T. Neill, and by them indorsed in blank. As to this note it was alleged:

"That the execution of said notes by F. S. Perry and J. M. Thomas was for the defendant Gorman Home Refinery, and they had authority so to do for said defendant."

Four notes in the sum of $5,000 each to the order of the makers, dated June 11, 1921, due in 90 days, signed by said Thomas, Perry, and Neill, and by them indorsed in blank. As to these four notes it was alleged:

"That said F. S. Perry and J. M. Thomas executed said notes for defendant Gorman Home Refinery and had its authority so to do."

As to all of the above notes it was alleged that they "were obligations of the defendant Gorman Home Refinery," and also the obligations of the various individual makers according to the signatures of such individuals.

The petition also declared upon an additional indebtedness amounting to about $22,000, created by the refinery to the bank about December, 1920, as evidenced by certain customer's sight drafts drawn by the refinery, trade acceptances of the refinery, and the further sum of $1,468 for money advanced to it. It is alleged:

"As to each of the individual defendants hereinbefore named, they and each of them are stockholders in said joint-stock company or association, and as such are liable to plaintiffs for each and all of the obligations hereinbefore set out, by reason of their being stockholders or shareholders and members in said company or association."

The petition admits a credit of $14,039.73, realized from the sale of the property covered by the deed of trust, and applied on the three notes dated June 11, 1921; also an additional credit of $7,196.98, which had been applied first to the payment of the above item of $1,468, and the balance upon the amount due on the customers' drafts. A copy of the Gorman Home Refinery declaration of trust was attached to and made a part of the petition.

Prior to the trial, the refinery was adjudicated a bankrupt. F. S. Perry was also adjudged a bankrupt and dismissed from the suit.

The pleadings of the defendants are very lengthy and need not be stated. The case was submitted upon numerous special issues, and, upon the answers returned, judgment was rendered in favor of the plaintiffs as follows: Against the refinery and J. M. Thomas for $533, being the balance due on the $6,000 note dated July 12, 1920, and the two notes for $5,000 each, dated October 14, 1920, less the sums of $14.039.73 and $7.196.98, admitted to have been received by the plaintiffs in their petition; the judgment making a different application of the payments than was sought to be made in the petition. Against J. M. Thomas, J. T. Neill, and R. T. Haile for $28,600 principal, interest, and attorney fees due upon the four notes for $5,000 each, dated September 30, 1920. Against J. M. Thomas and J. T. Neill for $34,030, due upon the five notes for $5,000 each; one being dated November 10, 1920, and the other four dated June 11, 1921.

The court rendered judgment in favor of all defendants upon the acceptances and customers' drafts and the item of $1,468 for money advanced. It was ordered that the plaintiffs take nothing by their suit against the individual defendant stockholders of the refinery.

The bank and Chapman, commissioner of banking, appeal from this judgment. No proposition is submitted challenging the correctness of the court's action in applying the admitted credits as shown in the judgment. The appeal involves the right of the plaintiffs to recover against the various stockholders of the refinery other than the signers of the notes, upon the theory that they were liable as partners for all of the refinery's debts.

To those portions of the petition declaring upon the notes dated September 30, 1920, November 10, 1920, and June 11, 1921, the appellees excepted, upon the ground that it affirmatively appeared that these notes were not signed by the refinery, its agents, nor by them, nor were any other facts alleged which would make these notes the obligation of the refinery or said appellees. This exception was sustained, and is here presented as error. Upon the views hereinafter stated, it becomes unnecessary to pass upon this matter.

W. D. Morrell was active vice president of the bank, and represented it in all of the transactions out of which the litigation arose. He died before the trial, for which reason his testimony was not available.

The declaration of trust creating the refinery stipulated against personal liability of the stockholders, and contained the usual provisions commonly found in such instruments, but, because of certain of its terms,

the attempt to relieve the stockholders of personal liability was ineffectual.

There is some conflict in the decisions of the Courts of Civil Appeals as to the validity of provisions in declarations of trust exempting from personal liability for its debts the stockholders of an organization operating under what is commonly known as a "Massachusetts Trust." It is unnecessary in this case to pass upon that question, for, if it be conceded that the Gorman Home Refinery constituted a partnership, and its stockholders liable generally as partners, still upon the jury's findings the appellees are not liable for the debts herein sued upon. The jury found that, at the time the indebtedness sued upon was incurred, it was agreed and understood between the bank and the refinery that the former should look only to the assets of the latter for the payment of said debts.

So far as we are advised, the authorities all uphold and enforce an agreement between a creditor and a partnership entered into at the time the debt is created exempting the members of the partnership from personal liability, and that the creditor shall look only to the assets of the partnership for the payment of the debt. This ruling was made by the Galveston Court in Industrial Lumber Co. v. Texas, etc., 31 Tex. Civ. App. 375, 72 S. W. 875, and, so far as we are advised, its correctness has never been questioned. Victor Refining Co. v. Bank (Tex. Civ. App.) 263 S. W. 622, the case most strongly relied upon by appellants, recognizes the validity of such an agreement. However, some of the authorities intimate or make obiter rulings that only an express contract to that effect will be enforced.

The jury's findings did not determine whether the agreement of the bank was express or implied. We agree with the appellants that the evidence is insufficient to show an express agreement to that effect at the time the original debt was created. But we are of the further opinion that the evidence is sufficient to show an implied agreement in fact to that effect at the time the debt was first created. It would serve no purpose to detail the numerous facts and circumstances which support this latter view.

The appellants claim that an implied agreement to look only to the assets of the refinery for the payment of the debts does not relieve the stockholders from personal liability; that the agreement to that effect must be express.

[1] In express contracts, the mutual assent of the parties and the terms thereof are expressed orally or in writing. In contracts implied in fact, such assent and the terms of the contract are inferred as a fact from the circumstances surrounding the transaction. There is a marked distinction between contracts implied in fact and those implied in law. In the latter there is lacking the element of actual assent, while in the former such element is present which, together with the terms of the agreement, is proven by the surrounding facts and circumstances. The only substantial distinction between contracts implied in fact and express contracts "rests in the mode of proof; the nature of the understanding is the same, and both express contracts and contracts implied in fact are founded on the mutual agreement of the parties. The one class is proved by direct, the other by indirect, evidence." 13 C. J. pp. 240-243: Patrick v. Smith, 90 Tex. 267, 38 S. W. 17; Cuneo v. De Cuneo, 24 Tex. Civ. App. 436, 59 S. W. 284; Feinberg v. Frank, 268 S. W. 494, recently decided by this court.

[2] The Texas cases last cited, we think, support the view that the only material difference between an express contract and one implied in fact rests in the mode of its proof. We know of no sound reason why the obligation of a contract, implied in fact, is not as binding as an express contract, except in those cases which require the contract to be in writing. Appellants cite no case where the question was directly involved which holds that an agreement by a creditor to look only to the assets of the partnership for the payment of his debt is ineffective, unless the agreement to that effect be express.

Upon the contrary, the following cases seem to sustain the opposite view, viz.: Hardee v. Adams Oil Ass'n (Tex. Civ. App.) 254 S. W. 602; George v. Hall (Tex. Civ. App.) 262 S. W. 174; Oden v. Bone (Tex. Civ. App.) 263 S. W. 640; Doyle L. Smith Oil Co. v. Continental Supply Co. (Tex. Civ. App.) 268 S. W. 489.

For the reason indicated, we therefore hold that, by virtue of a contract, implied in fact, between the bank and the refinery, at the time the debt was incurred, the former would look only to the assets of the refinery for the payment of the debt, the stockholders of the refinery are not personally liable except those who personally signed the notes, and that these last-mentioned stockholders are not liable upon the drafts and acceptances sued upon, nor for the item of $1,468 for money advanced.

[3] In addition to the finding of the jury indicated above, affirmative answers were returned to these issues:

"No. 2. At the time the indebtedness sued on was incurred if you find any was incurred, did the plaintiff bank know of those provisions in the declaration of trust which forbade the officers and agents of the Gorman Home Refinery from binding the stockholders of the refinery to a personal liability for its debts?"

"No. 10. Did W. D. Morrell, or any officer of the bank, while acting in its behalf, have notice of the fact that either the declaration of trust or the certificates of stock of the Gorman Home Refinery provided that its members and shareholders should not be personally liable for

its debts, at the time or prior to the time the indebtedness sued on was incurred?"

These findings are abundantly supported by the evidence. With respect thereto, appellants present the proposition that mere knowledge by the bank of a limitation upon the authority of the trustees to personally obligate the stockholders is insufficient to relieve such stockholders from liability. As to this, we express no opinion. Upon the ruling heretofore made, it is unnecessary to pass upon the same. Our decision is not based upon findings 2 and 10. Such findings, however, in connection with other facts and circumstances shown by the evidence, are material upon the issue vel non of a contract implied in fact that the bank would look only to the refinery's assets for the payment of its debt.

Affirmed..

### On Rehearing.

[4] The only portion of the motion for rehearing which it is deemed necessary to comment upon is that which complains of the ruling that the jury's findings do not determine whether the agreement of the bank to look only to the assets of the refinery for the payment of its debt was express or implied. It is contended the only issue submitted upon this phase of the case was whether such agreement was express. This contention is predicated upon an instruction given by the court, upon request of appellant as follows:

"In connection with special issue No. 1, you are instructed that mere knowledge is not sufficient to amount to an agreement, but that there must be the mutual intention of the parties, expressed at the time the alleged agreement is made, that the bank would look only to the assets of said refinery for the payment of its said indebtedness."

It is asserted this instruction eliminated the issue of an implied agreement. We do not so construe the same. As shown by the original opinion, in an express contract the agreement is expressed orally or in writing. In contracts implied in fact, the agreement is shown by the surrounding facts and circumstances; the difference between the two classes of contracts being in the proof thereof.

The charge in question did not say that the "mutual intention of the parties" must have been "expressed" in writing or orally. Under the charge as given, the jury were at liberty to consider all of the surrounding facts and circumstances in determining whether the bank agreed to look only to the assets of the refinery for the payment of its debt. In order for the charge to have had the effect contended for it by appellant, such charge must have limited the jury to the consideration of evidence showing such an agreement expressed orally or in writing, and this it did not do.

The motion is overruled.